## Price vs. The Milwaukee and St. Paul Railway Company and another.

Railroads—Damages: *Construction of railroad over land.— When owner may recover cost of building a retaining wall.—Effect of company's stipulating to build it.*

1. Where the charter of a railroad company required it to pay not only the value of the land taken for its road, but also the damage which the land-owner might sustain by reason of such taking, it was not error, in an action for such damages by one who had placed certain fixtures on his premises to adapt them to use as a water-cure, to instruct the jury that if, by reason of the construction of defendant's road across the premises, they had become unfit for such use, then the difference between what those fixtures were worth in connection with the property as a water-cure (not exceeding their reasonable cost), and what they were worth to be removed from the premises and applied to other uses, must be included in the estimate of the damages.

2. The cost of a retaining wall along the line of excavation for defendant's road over plaintiff's lots (such wall being necessary for the protection of the property) was properly allowed as part of plaintiff's damages, although the company offered to show that such a wall was also necessary for the protection of its road, and that its engineer had been instructed to construct the same, and had got the stone ready, and was about to do the work; and also offered to file a stipulation that it would build such wall, and that in case it failed to do so, the verdict in this action should not impair plaintiff's right to recover, in another action, the expense of building it.

3. Plaintiff could not be turned over to another action to recover the full amount of damage which had accrued to his lot from the building of the road; especially where defendant's stipulation did not limit any time within which it should build such wall.

4. Plaintiff offered to remit the expense of building such wall, provided the same should be built by the railroad company by a specified date, nearly seven months after the judgment was rendered. *Held*, that this was all, and more than all, that defendant could claim as a legal right.

APPEAL from the Circuit Court for *Dane* County.

The plaintiff appealed to said court from the award of commissioners appointed to estimate his damages for the construction of the "Sun Prairie Division" of defendant's road along the water side of certain lots abutting on Lake Monona, in the city of Madison. The amount so awarded was $500. It appeared that plaintiff purchased the lots from one Parkinson, in 1867, for

$4,500, paying $500 in cash, and mortgaging the property back to secure the remainder. It appears from the brief of counsel for defendant (but not from the printed case), that Parkinson (being made a defendant) had answered, accepting the amount awarded by the commissioners. At the trial (in December, 1869), after proof in the usual manner of the value of the strip taken, and the amount of damage done to the remainder of the lots by the building of defendant's road, the plaintiff was permitted to testify, against objection, that he had purchased the land and fitted it up for a water-cure, putting in a well, pipes, pumps, reservoirs, boilers, etc.; and to show the cost of said fixtures. He was then asked to " state the effect upon a water-cure of running a railroad as close to it as this one;" and, an objection to the question being overruled, answered that it was " a serious damage to the business of a water-cure." *Question:* "What was the property worth before the railroad came there, and what was the residue worth after defendant took a portion of it?" Objection by defendant overruled. *Answer:* " It cost me about $6,000, and I think it was worth that. Since the company took the right of way, it is worth from $2,500 to $3,000." *Question:* " Give your reasons for your estimate of the value?" Objection overruled. *Answer:* "I paid $4,500, and got it cheap, and it cost me the balance of the $6,000 for improvements." *Question:* " What were the fixtures and appurtenances to the property, placed there by you to fit it for a water-cure, worth?" *Answer:* "From $1,050 to $1,100." *Question:* " What, if anything, was the value of this as a water-cure after the railroad was built?" Objection overruled. *Answer:* " From $150 to $200." [This answer obviously refers to the value of the fixtures, etc. REP.] On his cross-examination he was asked successively, whether the mortgage to Parkinson had been foreclosed before the defendant took the land; what amount was due on the mortgage when the land

was so taken; and whether he had paid anything on the property after he took possession; but the questions were ruled out.    He was then asked whether the property was valuable as a water-cure at the time the defendant took possession, and answered that it was.    He was further asked how many patients he had at that time; but an objection by his own counsel to the question was sustained.    A physician, as a witness for plaintiff, was asked what would be the effect upon a water-cure establishment of running a railroad as near to it as defendant's road ran to plaintiff's premises; and, an objection to the question being overruled, he answered that he "should think it would be very injurious." Another physician, who had been a patient in such an establishment, was permitted, against defendant's objection, to testify that "the effect of a railroad being so near a water-cure as this" would be to "injure it very much;" and to state his reasons for so thinking; and also to testify as to the value, in his opinion, of the plaintiff's "improvements" after the railroad had been constructed.    Another witness, who had had experience in fitting up a water-cure, testified, under objection, as to the probable "cost or value" of the fixtures put up by plaintiff, and what they "would be worth to be moved;" and also as to what the place was worth to the plaintiff or any one using it as he did.    After defendant had introduced evidence tending to show that the damage to plaintiff's lots from the construction of the road did not exceed the sum required for the construction of a retaining wall along the bank, a witness testified that he was in defendant's employ, and knew how defendant intended to complete the road along the lake shore in question.    He was then asked whether he knew how the company proposed to fix the bank along these lots, and whether he had within a few days past heard defendant's general manager instruct the engineer to construct a retaining wall along the line of these lots; but the

questions were ruled out. Defendant's engineer, in charge of the " Sun Prairie Division" of its road, then testified that the road in said division was not yet completed, nor the construction account closed, that it was not fully gravelled, the marshes were not all filled, it was not all fenced, and the bridges were not yet completed. *Question:* " In order to complete the road along the lake and in front of plaintiff's lots, what is necessary to be done for the safety and convenience of the road, and what is necessary for its protection?" Ruled out. Defendant then offered to show that it was necessary for the safety of the road, and for its safe operation, for it to construct such a retaining wall along the bank of plaintiff's lots, and that it had actually got the stone ready for the purpose, and was about doing the same. In connection with this offer it further offered to file a stipulation that it would build such retaining wall, and that the verdict in this case should not impair plaintiff's right to recover of defendant the expense of building such wall, in a direct action for that purpose, in case defendant did not build it. This offer was refused.

The court instructed the jury, 1. That they must first determine the value of the strip of plaintiff's land taken by defendant, at the time of such taking. 2. That they must next determine the damage done to the rest of the land by defendant's taking and using said strip. 3. That the owner of the land was entitled to compensation for any depreciation in the value of such residue thereof caused by defendant's taking and using said strip. 4. That in estimating such damage they might determine the market value of said residue before the company took the strip, without reference to the fixtures and appurtenances for the water-cure, and its market value afterwards, and the depreciation in value by reason of the road would be the measure of damages without reference to such fixtures and appurtenances. 5. That if, before proceedings by

defendant to condemn the right of way, plaintiff had put upon the premises certain fixtures and appurtenances necessary to fit them for a water-cure, and if, by reason of the construction and use of the road across the premises, they became unfit for that use, the jury should also allow in damages the difference between what those fixtures and appurtenances were worth in connection with the property as a water-cure (not exceeding their reasonable cost), and what they were worth to be removed from the premises and applied to other uses.    6. That the jury had nothing to do with the question whether plaintiff would be likely to redeem the premises from the mortgage sale, but it was enough that he had a right to do so; and that the statement in Parkinson's answer, that he was satisfied with the award of the commissioners, should have no effect on their minds.    7. That they should assess the damages in accordance with the instructions given, and the court would determine what portion belonged to Mr. Parkinson and what portion to the plaintiff.    8. That if they assessed damages in plaintiff's favor, they should state what portion thereof, if any, was for loss sustained in reference to the fixtures and appurtenances placed on the premises by plaintiff to fit them for a water-cure; and also what portion, if any, was for the cost of making the the wall or other protection of the shore bank of the premises.

At defendant's request the court gave the following instructions: "1. You are not to allow plaintiff any damages on the ground that the road has destroyed or affected the property as a water-cure. I have rejected the evidence offered by defendant tending to show the business of the institution as a water-cure, and its value as such, and you cannot now consider that question. All that plaintiff claimed was for the value of the fixtures that have been rendered useless by the road. 2. Defendant is not liable in this proceeding for injury or damage to plaintiff's business as a physician

or water-curist. The measure of damages is the difference between the value of the property before and since the road was built and operated." The court added that the fixtures put up for the use of the water-cure were a part of the real estate. It further charged the jury that they could not anticipate that the buildings would be burned, or children killed, or sick or well persons disturbed by noise, and give damages on such grounds; but if it were shown that such dangers and annoyances existed, and were caused by the building of defendant's road across the premises, and that they had affected the market value of the premises, these facts should have weight just so far as they affected such market value, and no farther.

Verdict for the plaintiff, assessing the value of the strip taken at $50, and damages to the residue of the property at $1,000; of which $350 were allowed for plaintiff's loss upon the fixtures placed upon the premises to fit them for a water-cure, and $150 as the cost of making a retaining wall. A motion for a new trial was denied; and defendant appealed from a judgment on the verdict.

*Hopkins & Foote* and *Geo. B. Smith*, for appellant: 1. The law required the company to construct the road *in a safe and skillful manner*, and the *presumption* is that it will do so. Redfield on R. W. 154, 157; *Rochester White Lead Co. v. City of Rochester*, 3 Coms. 463. When damages arise from an improper construction of the road, they cannot be recovered in this proceeding, but the party must bring a distinct action for them. 4 Eng. L. & E. 265. When the damages have to be appraised and paid *before* the road is constructed, the commissioners or jury should not be allowed to give damages upon the theory that the company will not properly construct its road. *Nason v. Woonsocket R. R.*, 4 R. I. 379; 5 Gray, 35; 21 Ill. 31. 2. The offer to remit the cost of building the retaining wall, or delay execution therefor until a specified time, was not sufficient to cure

the error of the court. Defendant had a right to be heard on the question of time, and to show how soon it could do it. Besides, after the wall was built, plaintiff might issue an execution for the amount, on the ground that the wall was not a sufficient and proper one, and might compel us to try that question on affidavits, whereas we have a right to have it tried by a jury. 3. The court erred in excluding testimony to show that the mortgage given by the plaintiff had not been paid, and to show the amount due, and that it had been foreclosed. They tended to show that the plaintiff had no interest in fact in the property, and that the other defendant, Parkinson, was the real party in interest. 4. The court erred in refusing evidence to show that the property was useless to the plaintiff for the purposes of a water-cure, by showing that before the road was built the institution had no patients and was a failure. *Castleman v. Griffin*, 13 Wis. 535; *Remington v. Bailey*, id. 332; *State Bank v. Dutton*, 11 id. 371. 5. It was impossible for the jury to determine the depreciation caused by the road in the value of plaintiff's water-cure fixtures, without knowing whether they were previously available and valuable in fact to the plaintiff on the premises for the purposes of a water-cure; and it was impossible to ascertain this without proof as to whether the institution itself, as a water-cure, was successful and valuable.

*Spooner, Lamb & Spooner*, for respondent, argued, among other things, that the company was at least bound to build a retaining wall within a *reasonable* time, and that the seven or eight months allowed it for that purpose by the terms of the *remittitur* were obviously ample, especially if it had actually got the stone in readiness and was about to begin building the wall, as it had offered to prove; that the *remittitur* therefore answered every purpose of the stipulation offered by the defendant, so far as defendant's just rights were concerned, and differed from it only in giving plaintiff

a right to issue an execution for the money in case defendant failed to build the wall, instead of being put to a new action to recover it. 2. That there was no error in refusing the evidence offered as to the amount of plaintiff's business at the time the land was taken, (1) because the business of the institution, at any given point of time, was no test of the general value of the property to the plaintiff, even to be used by him as a water-cure; and (2) because, even if it had been shown that *he* was not able to manage such an institution so as to make it successful, he had a right to retain the property uninjured until he could dispose of it to some one who possessed such ability.

COLE, J. In this case, after the judgment was entered, the plaintiff filed a *remittitur* of $150, included in the damages by the jury as the cost of constructing a necessary retaining wall along his lot, to protect it from further injury and to restore the bank to its former condition; this *remittitur* to take effect providing the company should construct such wall by the 1st day of July, 1870. All the testimony upon the point went to show that such a wall was absolutely necessary, and the cost of it was beyond all question a proper item of damages. The company, however, offered to show that a wall was necessary for the security of its roadbed and the safe operation of the road, and that it had instructed its engineer to construct such a wall along the bank, and had procured the necessary material for that purpose. In the case of Thompson against this same defendant (*ante, p.* 93), we have held that such testimony was not legitimate and proper to go to the jury for the purpose of diminishing the amount of damages which a party was entitled to recover by reason of the taking and using of his land by the company. The expense of constructing this wall was a legitimate element to be considered in estimating the plaintiff's damages, and it was no defense to show that

it might be equally necessary for the security of the road. The fact appeared that the road had been built, and trains were running regularly over it. And when the plaintiff remitted the expense of building the wall, providing the company performed the work within seven months, it was all and more than the defendant was entitled to ask as a matter of strict legal right. *Thompson v. Milwaukee & St. Paul R. R. Co.*, just decided.

We perceive no valid objection to the instructions which the court gave in regard to the general rules to be observed by the jury in the assessment of plaintiff's damages. They are so obviously just and well-founded in sound legal principles, as really to require no comment or vindication. It appeared that the plaintiff had placed certain fixtures upon the premises, to adapt his property to use as a water-cure. The court, at the request of the defendant, told the jury that in considering the damages, they were not to allow anything to the plaintiff on the ground that taking the property by the company had destroyed or affected the residue of the premises for the use of a water-cure. And the court also, at the request of the plaintiff, instructed the jury that if they found that before proceedings were taken by the railroad company to condemn the right of way, the plaintiff had put into and upon the premises certain fixtures and appurtenances necessary to them for a water-cure, and that by reason of the construction and use of the railroad across the premises, the premises became unavailable and unfit for that use, then they were to allow in the damages the difference between what these fixtures and appurtenances were worth in connnection with the property as a water-cure (not exceeding their reasonable cost), and what they would be worth to be removed from the premises and applied to other uses.

The charter of the company in the clearest manner recognizes the principle that the company must pay

the price of the land taken and all consequential damages caused the land-owner by constructing the road across his land. Sec. 5, chap. 75, P. & L. Laws of 1860. And if the defendant entered upon the plaintiff's premises in such a way as to destroy the fixtures he had put upon them for use as a water-cure, he was entitled to compensation. The rule laid down in the above instruction is very favorable for the company.

It is claimed that whether the fixtures were valuable as appurtenances to a water-cure, depended essentially upon the question whether the institution itself was valuable. But suppose it had appeared that the water-cure was very flourishing and profitable, what then would have been the rule of damages? But without going into any general reasoning upon the point, it is enough to rest the question upon the language of the charter just cited. That requires the company not only to pay the value of the land actually taken for the use of its road, but also the damage or injury which the owner shall sustain or may sustain by reason of such taking. Manifestly the company had no right to destroy the fixtures of the water-cure without making some compensation therefor.

There are some other points discussed upon the brief of the counsel for the defendant, but we do not think they require any special notice. No error has intervened in the proceedings which would warrant a reversal of the judgment.

*By the Court.*—The judgment of the circuit court is affirmed.

PAINE, J., did not sit in this case.