Bigelow vs. The West Wisconsin Railway Company.

---

BIGELOW VS. THE WEST WISCONSIN RAILWAY COMPANY.

(1.) RULE OF PRACTICE IN SUPREME COURT: *Enlargement of time for service of printed case.*
(2, 3.) VERDICT: *What verdict must contain in action for taking of land. Power of court to receive verdict not framed as directed.*
(4, 5.) PRACTICE: *Exception to charge must be specific.—Holding trial open to enable party to procure testimony.*
(6–9.) COMPENSATION FOR LAND CONDEMNED FOR RAILROAD. (6.) *Rule for construing statutes.* (7.) *Charter construed.* (8.) *"Just compensation."—Constitutional rule construed.* (9.) *Evidence admissible under the rule.*

1. NEW RULE OF COURT.—"Either of the justices of this court, upon affidavit showing sufficient cause therefor, may grant an order to show cause to the court or any justice thereof, why the time prescribed by

---

* The proposed amendment described the tax deeds under which plaintiff claimed title, and contained proper averments to show that the land in suit was the land intended to be described therein.—REP.

rule 10 for the service upon the attorney of the adverse party of copies of the printed case should not be enlarged, or why the appellant or plaintiff in error should not be permitted to serve the same after the expiration of the time therein prescribed. The order shall specify the time within which a copy thereof, and of the affidavit upon which it was granted, shall be served upon the attorney of the adverse party. After such order to show cause shall be filed with the clerk, no order shall be entered dismissing the appeal or writ of error, unless by order of the court or one of the justices thereof."

2. Where commissioners to determine the compensation for land taken for a railroad, awarded such compensation expressly for a strip one hundred feet wide, it was not necessary, on appeal by the railroad company to the circuit court, to determine by verdict the amount of land taken.

3. If the judge has directed the jury to return a verdict determining that question, he may receive a verdict which fails to determine it.

4. An exception "to the last half" of the charge *held* too indefinite to be available in this court.

5. After the jury is empaneled to try a cause, the court may hold the trial open for a reasonable time to enable a party to procure testimony; and in this case it is *held* not to have been an abuse of discretion to hold the trial open for several days, there being no pretense that appellant was prejudiced by the determination of the court.

6. Where a statute admits of two constructions, one of which would make it valid, and the other void for repugnance to the constitution, the former should be adopted.

7. Where a charter of a railroad company provides that upon condemnation of land for its road, the commissioners shall "assess the value of the land taken," this is construed to mean that they shall award a "just compensation therefor;" since otherwise this provision would violate sec. 13, Art. 1 of the state constitution.

8. Where private property is taken for a public use, the "just compensation therefor" which the constitution requires, consists in paying the owner not only the value of the portion taken, but also the diminution of the value of that from which it is severed.

9. In an action against a railroad company for such taking, where plaintiff owned a quarter section of land, and the road-bed was wholly upon one "forty" thereof, he might show the diminution in value of the whole quarter section caused by the construction and operation of the road.

APPEAL from the Circuit Court for *Trempealeau* County.

The defendant appeals from a judgment for the plaintiff. The case is stated in the opinion.

*Geo. Graham*, for appellant, contended that by the terms of the company's charter, plaintiff was entitled only to "the value of the land entered upon, taken, possessed, occupied and used by said company" (sec. 11, ch. 243, P. & L. Laws of 1863); that a "just compensation," within the constitutional provision on that

subject, means the actual value of the property taken, in money, without any deduction for estimated profit or advantage accruing to the owner from the proposed use of his property; that speculative advantages or disadvantages are matters of set-off against each other (Sedgw. on Dam., 3d ed. 602); that even if the provision of the charter does not satisfy the requirements of the constitution, plaintiff, having elected to pursue the remedy laid down in the charter, must be bound by its provisions; and that the distinction has been very decidedly drawn in this court between the value of the land and damages for the taking. *M. & M. R. R. Co., v. Eble,* 4 Chand. 72; *Robbins v. R. R. Co.,* 6 Wis. 636.    2. He contended that inasmuch as the charter of the company provides that the absolute title in fee simple to the land shall vest in the company after payment of the compensation awarded, and inasmuch as there was a conflict of testimony as to the width of the strip taken for a portion of the distance, the jury should have determined that issue, in accordance with the directions of the court.    See 31 N. J. 180; 5 Gray, 39.    3. He also argued that the court erred in continuing the case to enable plaintiff to procure evidence.

*Montgomery, Tyler & Dickinson,* for respondent, as to the measure of damages, cited *Robbins v. R. R. Co.,* 6 Wis. 636; *Snyder v. W. U. R. R. Co.,* 25 id. 60; *Price v. M. & St. P. R. W. Co.* [*ante,* p. 98]; 9 Ind. 433, 467; 47 Pa. St. 428; 6 How. Pr. R. 467; 35 id. 420.    To the point that the exception to the charge was too indefinite, they cited *Strohn v. R. R. Co.,* 23 Wis. 126; *Gilman v. Thiess,* 18 id. 528; *Nicks v. Town of Marshall,* 24 id. 139; 15 id. 256; 16 id. 224; 5 id. 166.    They also contended that the verdict was in strict compliance with the charter of the company in being confined to the question of what amount plaintiff should recover; and that the quantity of land taken was shown by the records of the proceedings to condemn the same.

Bigelow vs. The West Wisconsin Railway Company.

LYON, J.   A motion, involving a question of practice, will be disposed of before proceeding to consider the merits of the case.

During the present term, and on the 9th day of January last, on the affidavit of the attorney for the appellant, and without notice to the respondent, one of the justices of this court granted an order giving the appellant until the 24th of the same month to serve the printed cases required by rule 10 of the rules of this court adopted in 1857.   On the 10th day of the same month, a motion was filed to set aside and vacate that order for reasons stated in the motion. We are of the opinion that the appellant showed that he was entitled to the relief which the order gave him, and have concluded to deny the motion to vacate it. It is unnecessary to consider the grounds assigned in the motion for vacating such order.

For the purpose, however, of settling the practice in this court in like cases, we adopt the following rule : Either of the justices of this court, upon affidavit showing sufficient cause therefor, may grant an order to show cause to the court or any justice thereof, why the time prescribed by rule ten for the service upon the attorney of the adverse party of copies of the printed case should not be enlarged, or why the appellant or plaintiff in error should not be permitted to serve the same after the expiration of the time therein prescribed.   The order shall specify the time within which a copy thereof, and of the affidavit upon which it was granted, shall be served upon the attorney of the adverse party.   After such order to show cause shall be filed with the clerk, no order shall be entered dismissing the appeal or writ of error, unless by order of the court or one of the justices thereof.

We now proceed to a consideration of the merits of. the action.   The defendant, the railway company, located and constructed its line of railway across certain lands of the plaintiff in the county of Monroe,

and procured an appraisement and award of the damages resulting therefrom to the plaintiff to be made by commissioners appointed for that purpose pursuant to the provisions of its charter. From such award the plaintiff duly appealed to the circuit court for that county. The case was removed to the circuit court for Trempealeau county, and there tried. The jury assessed the plaintiff's damages at $425, for which sum and costs judgment was rendered against the defendant, who appealed therefrom to this court.

Various exceptions were taken during the trial to the rulings of the court admitting testimony offered by the plaintiff. Exceptions were also taken by the defendant "to the last half" of the charge given to the jury by the circuit judge, and to the verdict, "for the reason that it did not determine the quantity of land taken, as directed by the court."

It was entirely unnecessary that the jury should determine the quantity of land taken. The only controversy on that subject was, whether the strip of land taken was one hundred feet wide, as claimed by the plaintiff, or only sixty-five feet wide, as claimed by the defendant. But the proceedings before the commissioners show that a strip one hundred feet wide was condemned; and upon payment or deposit of the sum awarded by the commissioners therefor, the title thereto vested in the defendant. There was therefore no room for controversy as to the width of the strip taken; and although the judge may have directed the jury to determine the quantity of land taken by the defendant, yet it was competent for him to revoke such direction, and receive the general verdict which the jury returned to the court, and which was so received.

But I am not satisfied that the judge intended to instruct the jury to return a special verdict finding the amount of land taken and fenced in. I am inclined to think that he only intended to instruct

the jury to ascertain that fact because it was a circumstance proper to be considered in assessing damages to the plaintiff. The instruction was as follows: "The jury will determine the amount of land actually taken and fenced in, and the statements made by the agent of the railroad company in the presence of the plaintiff are competent to prove what is actually taken." It is difficult to find here an instruction to return a special verdict finding "the quantity of land taken and fenced in." But if the instruction directed a special verdict to be returned, the court revoked the instruction by implication when it received the general verdict alone, and this, for reasons already stated, was not error.

The exception to the charge of the court is too general and indefinite to be available in this court. The statement in the bill of exceptions is as follows: "To the last half of which charge the defendant then and there excepted." This court has repeatedly held that it would not review the charge of the circuit judge unless his attention was specially called to those portions complained of, when the same was given, so that he might have an opportunity to modify or withdraw the objectionable portions, should he deem them incorrect. *Nicks v. Town of Marshall*, 24 Wis. 139; *Strohn v. The Detroit & Milwaukee R. R. Co.*, 23 Wis. 126, and cases there cited.

The court gave all the instructions asked by the counsel for the defendant. I therefore dismiss from further consideration the exceptions to the charge of the court, and to the verdict of the jury.

The trial of the action commenced October 14, 1869; and after the jury were sworn and a witness had been called for the plaintiff and sworn, the plaintiff requested the court to hold the case open a sufficient length of time to enable him to send to Monroe county for the evidence of his title to the land condemned and taken by the defendant. The counsel for

defendant objected thereto, but the court granted the request, and continued the further hearing of the case to Saturday morning, October 16th; to which ruling the counsel for the defendant duly excepted. The trial was not resumed until Monday, October 18th; and the jury which had been empaneled and sworn on the 14th was recalled, and was the jury which heard the case and rendered the verdict therein.

I see no error in this ruling. It is clearly within the discretion of the court, in a proper case, to hold the trial open a reasonable time to enable either party to procure testimony; and unless such discretion is abused, it is not error. There is no pretense here that the defendant was injured or its rights prejudiced in any manner by this ruling of the court; and I think that such ruling was not an abuse of the discretion which the law gave the circuit court in that behalf.

The only remaining exceptions to be considered are those which were taken to the rulings of the court admitting certain testimony offered by the plaintiff upon the trial of the action.

It appeared upon the trial that the plaintiff was the owner of the northwest quarter of a certain section, and that the railroad of the defendant was located and built diagonally across the northwest corner thereof, and entirely upon the northwest quarter of such quarter section. The testimony showing that the plaintiff was the owner of the northeast quarter, and the south half, of the quarter section, was objected to.

Several witnesses were also allowed to testify, under like objection, as to how much less the remainder of the quarter section was worth at the time the land was taken by the defendant, than the whole quarter section would then have been worth had the same not been taken.

The objection to the foregoing testimony is predi-

cated upon the peculiar language of the charter of the defendant providing for condemning land for its railroad, etc. The charter simply makes provision for an appraisement and award of *the value of the land taken*, and is entirely silent on the subject of compensating the owner for any damage which may result to him in case such taking of his land depreciates the value of his other lands lying contiguous to that so taken, and being part of the same tract. Pr. and Local Laws of 1863, ch. 243. It is urged that this language distinguishes this charter from nearly all of the railroad charters which have been granted by the legislature of this state; and that while under such other charters the owners of the land taken may recover compensation for the damages to his whole tract, by reason of the taking of a portion of it, he can only recover, in a case arising under the charter of the defendant, the mere naked value of the land actually taken, without regard to the effect of such taking upon the balance of his lot or farm.

If this position is correct, then very clearly the circuit court erred in admitting the foregoing testimony against the objection of the defendant; and as such testimony evidently increased the amount of damages assessed, it would follow that the judgment should be reversed. On the other hand, if this position is incorrect—if it was competent for the plaintiff to show how the residue of his farm was affected in value by reason of the taking of the strip in question by the defendant—then it seems equally clear that the rulings of the court below admitting such testimony were correct, and that the judgment should be affirmed.

After a careful consideration of the subject, I am impelled to the conclusion that the construction of its charter for which the counsel for the defendant has so earnestly and ably contended, is untenable. He concedes, if I understand him correctly, that had the charter provided for making *compensation* to the

owner of the land taken, or for assessing his *damages*, under the authorities, the rule would have been otherwise. I think that it is not difficult to demonstrate that the terms " assessing the value of the land taken," and " making compensation to the owner for the land taken," mean the same thing.

Section 13, article I, of the constitution of this state provides, that " the property of no person shall be taken for public use without just compensation therefor." Under this restriction the state may, in the exercise of its right of eminent domain, appropriate to public use the private property of the citizen. In respect to the land taken from the plaintiff, the state has delegated, or has attempted to delegate, to the defendant, this high attribute of its sovereignty. But the defendant takes the power subject to the restriction, or it does not take it at all. Unless the law which purports to confer the power to take the land provides for just compensation to the owner thereof, it is in violation of the constitutional restriction, and therefore void. Hence, unless the provision in the charter of the defendant for " assessing the value of the land taken " is equivalent to one giving the owner " just compensation for the land taken," the charter in that respect is void, and the company have no power to take land for any purpose, without the consent of the owner thereof. It must be assumed that the legislature intended to confer upon the defendant a valid power; and if so, the conclusion is irresistible, that by the terms " value of the land taken " it meant just compensation to the owner for the land which it empowered the defendant to take.

It requires neither argument nor reference to authorities to show that when the language of a statute admits of two constructions, one of which would render it constitutional and valid, and the other unconstitutional and void, that construction should be adopted which will save the statute. An

application of this rule to its charter defeats the construction for which the counsel for the defendant contends, and saves to the defendant the powers therein granted.   Inasmuch as the defendant has taken private property pursuant thereto, it cannot justly complain if we give to the charter a construction which will save the rights thus asserted under it.   We hold, therefore, that the provision of the defendant's charter by virtue of which the land of the plaintiff was taken, entitles him to just compensation therefor.

The only remaining question to be considered is, What constitutes such just compensation?   In *Rochester & Syracuse R. R. Co. vs. Budlong*, 6 How. Pr. 467, JOHNSON, J., says: "Compensation includes not only the value of the portion taken, but the diminution of the value of that from which it is severed, also."   Nearly all the authorities bearing upon this subject are to the effect that "just compensation" consists in making the owner good, by an equivalent in money, for the loss he sustains in the value of his property by being deprived of a portion of it.   *Rochester & Syracuse R. R. Co. v. Budlong, supra; Evansville & Crawfordsville R. R. Co. v. Dick*, 9 Ind. 433; *Harvey v. Lackawanna & Bloomsburg R. R. Co.*, 47 Pa. St. 428; *Schuylkill Navigation Co. v. Thorburn*, 7 S. & R. 411; *Same v. Farr*, 4 Watts & S. 375; Pierce on Am. Railroad Law, 203—title, "MEASURE OF DAMAGES," and numerous cases cited in note 1, p. 204.   I cite but a very small portion of the cases which sustain this doctrine.

To the same effect is the reasoning of this court in *Robbins v. Milwaukee & Horicon R. R. Co.*, 6 Wis. 636, and in *Snyder v. The Western Union R. R. Co.*, 25 Wis. 60; and *Welch v. M. & St. P. R. R. Co.* [ante, p. 108].   See also *Milwaukee & Mississippi R. R. Co. v. Eble*, 4 Chand. 72.   Some of these cases were decided upon statutes, and without direct reference to the constitutional provision under consideration.   This may be true of

many of them, though not of all.   But the fact that statutes authorizing the taking of private property for public use so universally provide, not only for paying the owner "the value of the portion taken, but also the diminution in the value of that from which it is severed," demonstrates that such provisions are generally understood to be necessary to meet the constitutional requirement that just compensation be made therefor.   However that may be, the definition above given, as deduced from the authorities, is so eminently reasonable and just, that we adopt it without hesitation, and hold that where private property is taken for public use, the "just compensation" which the constitution provides shall be made therefor, consists in paying to the owner thereof, "not only the value of the portion taken, but also the diminution of the value of that from which it is severed."

Applying these principles to this action, it was competent for the plaintiff to prove that he was the owner of the whole quarter section, and also how much it was depreciated in value by reason of the taking of the strip of land in question by the defendant.   This is precisely what he was permitted to do. We find no error in the rulings of the court in admitting testimony, of which the defendant has any right to complain.

The judgment must be affirmed.

*By the Court.*—Judgment affirmed.