Driver and others vs. The Western Union Railroad Company.

## DRIVER and others vs. THE WESTERN UNION RAILROAD COMPANY.

32   569
82   544
32   569
95   225
32   569
101   92
32   569
d107  283
32       569
57 LRA 940n

DAMAGES FOR TAKING OF LAND FOR RAILROAD. (1) *Date to which damages must refer.* (2–5) *Circumstances which will not affect the rule.* (6) *Evidence as to such damages.* (7) *What part of plaintiff's property to be considered.*

1. Under the charter of the defendant company, and by the general principles applicable to such cases, the damages for the taking of land for railroad purposes should be estimated as of the day when the company acquired the right to the property; in this case, the day when the commissioners made and filed their award of damages.

Driver and others vs. The Western Union Railroad Company.

2. The fact that before the day thus fixed plaintiff had been notified by the company that it would want their lot 7 (the one afterwards taken), and that he had proceeded with the erection of a large manufactory on adjoining lots (which he had purchased, with lot 7, for that purpose), will not prevent him from recovering the diminution in value of such adjoining property as of the day aforesaid, though a large part of such diminution arose from the fact that lot 7 was needed for the convenience of said manufactory.

3. Nor will the fact that the company had commenced proceedings to condemn the land before plaintiff's manufactory was built, affect the application of the rule; it being within defendant's power to abandon such proceedings at any time before the award was made.

4. Nor will the fact that the company had occupied a part of lot 7 with its track under a *license* from plaintiff's grantor, affect the rule of damages.

5. The fact that the company *might* at some future time take steps to condemn said lot 7, could not deprive plaintiff of his right to improve the adjoining lots *in good faith*, and recover full damages for any decrease in their value as thus improved, which might be caused by such subsequent condemnation.

6. Evidence of the business to which plaintiff's adjoining property was devoted, and of the effect upon such business of the taking of lot 7 by defendant, was properly admitted as bearing upon the question of damages; the court having duly instructed the jury that the proper measure of such damages was the value of the land condemned and the *diminution in market value* of the other property. *Snyder v. R. R. Co.*, 25 Wis., 60.

7. Plaintiff is entitled to recover the diminished value of the *whole* of such adjoining property (used in connection with his manufactory), and not merely that of a single lot next adjoining the land taken. *Welch v. R. R. Co.*, 27 Wis., 108.

APPEAL from the Circuit Court for *Racine* County.

Chapter 16, P. & L. Laws of 1854, entitled "An act to amend the charter of the Racine, Janesville & Mississippi Railroad Company," contained the following provisions: "It shall be lawful for said company * * * to enter upon any land for the purpose of exploring, surveying and locating the route of said road, doing thereto no unnecessary damage ; and when said route shall be determined by the said company, it shall be lawful for them * * * at any time to enter upon, take pos-

session of and use such lands, not exceeding one hundred and thirty feet in width along the line of said route, subject, however, to the payment of such compensation as the company may have agreed to pay therefor, or such as shall be ascertained in the manner hereinafter directed and provided in such cases respectively. And said company are further authorized * * * to enter upon lands adjacent to the railroad beyond the limits of one hundred and thirty feet, in the manner provided in this act, when necessary for the purpose of erecting depot buildings, station houses and necessary fixtures for the operation and the business of said road. * * * And all lands so acquired, and all damages which shall be done to any lands or property under the provisions of this section, shall be ascertained and paid for in the manner and agreeably to the provisions hereinafter provided ; and when such damages shall have been paid for or tendered, the title to the land occupied by such railroad, fixtures, excavations and embankments shall invest in fee simple in said company.

" It shall be lawful for any judge of the supreme, circuit or county courts of this state, on application of the said company, either in term time or vacation, and at the cost of said company, to appoint three disinterested persons, residing in the county where such lands are situated, not of kin to the owner or owners thereof, whose duty and charge it shall be to view and examine all the lands so taken in said county, with the buildings and improvements, if any, thereon, and to estimate the value of the lands so taken or required by said company, and all damages which the owner or owners thereof shall sustain or may have sustained by reason of the taking of the same for the construction and use of said road or works appertaining thereto, taking into consideration the advantages as well as the disadvantages of the same, by means of the construction and operation of said road, to the said owner or owners ; and when said commissioners are so appointed, they shall act in all cases arising in said county requiring the action of commissioners, whenever

Driver and others vs. The Western Union Railroad Company.

said company shall be unable to agree with the owner or owners of said lands. * * * Whereupon such commissioners shall proceed to examine the premises and estimate the value of such lands and the amount of damages, if any, over and above the benefits and advantages which may accrue to the owner or owners as aforesaid," etc.

In March, 1870, the *Western Union Railroad Company* (which was the successor of said Racine, Janesville and Mississippi R. R. Co.) obtained, in pursuance of said act, the appointment of three commissioners to estimate the value of certain lands in Racine county, "not then acquired by condemnation or purchase, which had then been taken or would be thereafter required to be taken by said company for railroad purposes," and to "estimate the value of the lands so taken or required to be taken, and all damages which the owner or owners thereof should sustain or might have sustained by reason of the taking of the same." *   The commissioners awarded to the plaintiff damages in the sum of $1.750 for the condemnation of lot 7, block 5 in the first ward of the city of Racine. From this award the plaintiffs appealed to the circuit court.

It appeared on the trial that the plaintiffs *Driver* and *Van Pelt* were the owners of lots 7, 8, 9 and 10 in said block 5, on the 7th of May, 1870; that they had contracted to purchase them in January preceding, from the plaintiff *Herrick*, whose interest at the commencement of the action was that of a mortgagee; that the lots were each fifty feet in width; that lot 7 was bounded on the west by Wisconsin street, and the other lots lay to the east of it in the order of their numbers, and all fronted on Second street; that *Driver* and *Van Pelt* bought these lots for the purpose of building a sash and door factory and planing mill thereon; that when they purchased, a track of the defendant company's road crossed one corner of lot 7; that they located the foundation of their mill in the first in-

---

* The substance of the application is stated in the language above quoted, in the printed case. — REP.

Driver and others vs. The Western Union Railroad Company.

stance in such a manner that about five feet of the western end was situate upon lot 7 ; that afterwards *Mr. Driver* was informed by Mr. Olin, the superintendent of the defendant company, that the company must have lot 7 for railroad purposes, to which he replied that he did not see how they (*Driver* and *Van Pelt*) could get along without lot 7 ; that a few days later they received a written notice from the company that it would require lot 7 for railroad purposes ; that they then removed their foundation so that the western end of it was upon lot 8, and 32 feet east of the line between lots 7 and 8 ; that the object of this removal to such a distance eastward was to get room to handle their lumber at the west end of the mill ; that there was a distance of twelve feet between the east end of their building and the east line of lot 10 ; and this space was used for piling lumber ; that the railroad company had constructed a fence between lots 7 and 8 ; that the plaintiff's mill was finished and running about the 1st of May, 1870 ; that they did not take their deed until after they received the written notice above described ; that the purchase price of the four lots was $4,000 ; and that their value, with all the improvements made by plaintiffs, was $31,000. The plaintiffs were further allowed to show, against objection, (1) the value of lot 7 on the 7th of May, 1870 ; (2) the value of lots 8, 9 and 10 on the same day, including the plaintiffs' improvements thereon ; (3) the uses to which they would have put lot 7 in their business, if it had not been taken by the company; (4) the additional labor and expense caused them in handling their lumber, in consequence of the taking of said lot, and the consequent depreciation in the value of their property.

The defendants offered evidence to show the following facts : that some time in the latter part of January, 1870, *Mr. Driver* called upon Mr. Olin, the superintendent of defendant's road, to make a certain request; that he then stated to Mr. Olin that *Driver & Co.* had purchased lots 7, 8, 9 and 10 from *Herrick* the day before, and the deeds were not yet made ; that Olin there-

upon told him (said *Driver*) that the railroad company must have lot 7 for railroad purposes, and he did not know but they must have more; that *Driver* replied that he expected the railroad company would have what it wanted for railroad purposes, and that *Herrick* had excepted the corner of lot 7, occupied by the railroad track; that on the next day Mr. Olin went upon the premises and there stated to *Mr. Driver* that the railroad company must have lot 7 for railroad purposes, and inquired what the price would be; that after considerable conversation concerning the purchase of the lot, it was understood by the parties that they could not agree; that thereupon Olin informed *Driver* that the railroad company would proceed at once to condemn lot 7 for railroad purposes, and would have to build a tight board fence for its protection; and that on the 9th of February, 1870, a written notice was served upon the plaintiffs by the attorney of the defendant, a copy of which notice was offered in evidence, and by the terms of which plaintiffs were notified that the railroad company then occupied, as a part of their right of way, part of said lot 7, and that such right of way had been occupied for railroad purposes for more than ten years then last past, and said company required the whole of said lot for railroad purposes, and, unless it could purchase it from the owners at an agreed price, proceedings would be taken as soon as practicable, in behalf of the company, to condemn said lot. This evidence was all rejected, and also all evidence offered by defendants to show the value of lot 7 on the 2d of February, 1870, viz., *after* plaintiffs had been *orally* notified that the company would require lot 7, and just *before* they had commenced the erection of their mill on the present site.

The evidence on both sides as to the amount of plaintiffs' damage was voluminous, and will not be stated here.

The circuit court instructed the jury substantially as follows: " It appears that the plaintiffs were the owners of lots 7, 8, 9 and 10, in block 5, in the first ward of this city, on the 7th of

Driver and others vs. The Western Union Railroad Company.

May last. Upon this appeal you are to re-appraise their damages upon the following principles: *First.* You are to allow them what would have been the fair market value of lot 7 on the 7th of May last, had there been no railroad track on the lot, or on the east half the street by which said lot was bounded on its west side [viz., that part of the street of which the fee was in the plaintiffs]. *Second.* If the market value of lots 8, 9 and 10 is permanently depreciated by reason of the taking and appropriation of lot 7 for railroad purposes, you will also allow plaintiffs the amount of such depreciation, estimated as of the 7th of May last, less any benefits which have accrued thereto by reason of the drain constructed by the railroad company. I do not recollect that there is any testimony tending to show any other special benefits resulting to plaintiffs by reason of the construction of the railroad, or by reason of any improvement made by the railroad company. Plaintiffs are not chargeable for any benefits so resulting to them or their property which are enjoyed by them in common with the rest of the community."

" Counsel for defendant has moved the court to strike out the evidence relating to the use to which the property has been put by its owners, and the effect upon such use of the taking of lot 7 for railroad purposes. This evidence was admitted upon the sole ground that it might have a bearing upon the question of the market value of the property before and after the condemnation of lot 7 for railroad purposes, and upon that ground, and that alone, I think the evidence was properly admitted. The use to which the owners have applied the property is of no importance beyond its influence upon the question of the market value thereof and such alleged depreciation."

. " No damages to plaintiff's premises adjacent to lot 7 are to be considered, except such directly result from the taking and appropriation of said lot, i. e., the depreciation in the market value of lots 8, 9 and 10 by reason of the taking of lot 7 — less the peculiar benefits thereto, already spoken of."

"If you find that the aggregate of such damages exceeds $1,750, you may allow interest on such aggregate, at seven per cent., from the 7th of May last to the present time."

The court refused instructions asked by the defendant, which were in substance as follows: 1. That the fact that the land taken was to be used for railroad purposes rather than for any other lawful purpose, was not to be considered in estimating the damages to the premises not taken. 2. That the jury were not to estimate damages to any part of the premises not taken except lot 8 (which alone was immediately adjoining the lot taken). 3. That if, prior to the time when plaintiffs made their improvements and erected their structures on their premises not taken, they were notified by the railroad company that lot 7 was required for railroad purposes, and that, unless said company could otherwise acquire the right to said lot from the owners, proceedings would be taken to condemn the same for railroad purposes, and if plaintiffs, nevertheless, proceeded to make such improvements and erect such structures, they were not entitled to any damages to said adjacent premises on account of the taking of lot 7, except the depreciation in market value of said adjacent premises occasioned by the condemnation of that lot. 4. That the particular use to which plaintiffs had appropriated the premises not taken, should not be considered in estimating the damages thereto.

Verdict in favor of the plaintiffs, for $6,032.80 damages; new trial denied; and defendant appealed from a judgment on the verdict.

*Fuller & Dyer*, for appellant, contended that the circuit court erred in confining the evidence as to the value of lot 7, and the depreciation in value of the adjoining lots, to May 7, 1870, and also in excluding the evidence offered by defendant; that the possession of a part of lot 7 taken and held by defendant for many years before the purchase of *Driver* and *Van Pelt*, in locating, constructing and maintaining their track thereon, with the knowledge and approval of the owner, was a lawful pos-

session authorized by the charter, and not a trespass; that the facts in *M. & M. R. R. Co. v. Eble* (4 Chand., 72), relied on by the court below, were so different as to prevent that case from being an authority in this; that the value of the land taken, and the depreciation in value of the rest of the premises, should be estimated with reference to the condition of the property when the land was actually taken and occupied for railroad purposes (*Whitman v. Railroad*, 7 Allen, 326); and that the plaintiffs, after full knowledge of the possession by the company, its need of lot 7, and its intention to take proceedings to condemn the same, could not make those proceedings by the company and the erection of improvements by themselves *a race between the parties*, and then, if winners in point of time in that race, recover damages for a depreciation in the value of such improvements caused by such condemnation. 2. The court erred in admitting evidence of the use to which lots 8, 9 and 10 were devoted, of the business carried on by the plaintiffs thereon, and the effect upon such use and business of the taking of lot 7. The true rule of damages as to those lots is the difference in their market value without reference to any particular business. *Troy & Boston R. R. Co. v. Lee*, 13 Barb., 171; *Troy & Boston R. R. Co. v. Turnpike Co.*, 16 id., 100; *Application of U. V. R. R. Co., etc.*, 53 id., 457; *Matter of William and Anthony Sts.*, 19 Wend., 680; *Whitman v. B. & M. R. R.*, 3 Allen, 134; *B. & W. R. R. v. Old Colony R. R.*, 12 Cush., 605. Counsel argued further that even if such testimony as that here objected to were admissible in a case where the property affected was devoted to special business uses *at the time of the taking* for railroad purposes, it was clearly inadmissible under the peculiar facts and circumstances of this case. 3. Counsel also argued that the court erred in refusing instructions asked by defendant.

*John T. Fish* and *Elbert O. Hand*, for respondent, to the point that damages were properly assessed as of the 7th of May, 1870, cited *M. & M. R. R. Co. v. Eble*, 4 Chand., 72, 80; *Rob-*

*bins v. M. & H. R. R. Co.*, 6 Wis., 636; 22 id., 581; 2 Iowa, 288; 5 Rich., 428; 2 Zab., 495; 34 Me., 247; 15 Pick., 198; 7 Allen, 313–326; 1 Am. R. R. Cases, 212, note; 3 Sandf. (S. C.), 689.   2. The buildings constructed on lots 8, 9 and 10 prior to May 7th, 1870, were built for a planing mill and sash and door factory, and were suitable for that purpose and no other.   The market value of the property depended on the facility with which the buildings and premises could be used for that purpose; and testimony showing that their use for that purpose was injured by the taking of lot 7 had a direct bearupon the question of the depreciation of the market value of the premises in consequence of such taking; and the jury were carefully instructed that such testimony had been admitted and was to be considered for that purpose alone.   The evidence was rightfully admitted.   *B. & W. R. R. v. Old Colony etc. R. R.*, 12 Cush., 605; *S. C.*, 3 Allen, 142, 146; *S. & E R. R. v. Doughty*, 2 Zab., 495; *Robbins v. M. & H. R. R. Co.*, 6 Wis., 643; *Snyder v. W. U. R. R. Co.*, 25 id., 60.

.   Cole, J.   It is very clear to our minds that there was no error in the ruling of the court below in holding that the jury, in estimating the damages, should consider the value of the premises as of the 7th day of May, 1870, the time of the taking and condemnation of lot 7 for railroad purposes.   This is the time the land was actually taken by the company under its charter, and when the commissioners appointed to appraise the damages made their award.   The charter makes it the duty of the commissioners to view and examine the lands which are taken for the use of the road, with the buildings and improvements thereon, and to estimate the value of the lands so taken or required by the company, and all damages which the owner should or might sustain by reason of the taking of the same for the construction and use of the road, taking into consideration the advantages as well as the disadvantages of the same, by means of the construction of the road, to the owner of the

property. Section 1, ch. 16, P. & L. Laws of 1854. Upon the commissioners making and filing their report, and payment or legal tender of the appraisement to the owner, or upon the payment of the amount to the clerk of the court to which the appeal has been taken, title vests in the company. Now the 7th of May was the time the commissioners made and filed their award, and when the company, by depositing the amount thereof with the clerk, acquired, under the charter, the right to lot 7. This, then, was the actual taking of the property for the use of the road, and the time to fix its value, not only within the intent of the charter, but upon general principles applicable to these cases. *The Milwaukee & Miss. R. R. Co. v. Eble*, 4 Chand., 72; *Robbins v. Milwaukee & Horicon R. R. Co.*, 6 Wis., 636; *Kennedy v. The Mil. & St. Paul R. R. Co.*, 22 id., 581. The plaintiffs were entitled to recover the value of lot 7 at the time it was condemned and appropriated by the company, together with such damages as they sustained by reason of the taking of the same over and above the advantages to them in consequence of the construction and operation of the road.

The counsel for the company would probably not contest the correctness of these views in ordinary cases, but he claims there are special circumstances surrounding this case which call for the application of a different rule.

It appears that the plaintiffs purchased lots 7, 8, 9 and 10 in block 5 in the first ward of the city of Racine, some time in January, 1870, and early in the next month proceeded to lay the foundation for a planing mill and a sash and door manufactory on lots 8, 9 and 10, leaving a space of about twenty-five feet between the west side of the building and the west line of lot 8, and of twelve feet between the east wall of the building and the east line of lot 10. Upon this foundation a costly and extensive establishment was erected before the commissioners made their award, in May, of the value of lot 7 and the damages sustained by the plaintiffs to the adjacent property in consequence of the taking of this lot for railroad pur-

poses. · Long prior to the purchase by the plaintiffs, the railroad company had laid its track across the corner of lot 7 with the consent of the owner, Charles Herrick, of whom the plaintiffs bought. It does not appear that the company had anything more than a parol license thus to occupy the corner of this lot; or that Herrick had done anything from which the company could justly infer that compensation for the property taken had been waived. But the plaintiffs had knowledge of the existence of the track there, and that the company was operating its road over it, when they purchased. And immediately after the plaintiffs' purchase, negotiations commenced between them and the officers of the company in respect to the acquisition and use by the company of lot 7 for the purposes of the road, and the plaintiffs were notified that the company had been in possession of a part of that lot for more than ten years; that the entire lot was required for the use of its road; and that, unless it could be purchased at an agreed price, proceedings would at once be taken under the charter to condemn the whole lot. Proceedings were accordingly instituted, which resulted in an award on the 7th of May. But in the meantime the plaintiffs went on with their improvements, and, when the commissioners came to examine the premises, had their planing mill and manufactory in successful operation. And it is insisted by the counsel for the company, that it is contrary to every just principle of law or equity to allow the plaintiffs, after notice of the purposes and rights of the company in respect to lot 7, to proceed with their improvements and thereby enhance the damages which the company must pay on account of the depreciation of the adjoining property when it came to condemn that lot. As one item of damages, the plaintiffs were permitted to recover the depreciation in the market value of the property adjacent to lot 7 by reason of the taking of that lot by the company for the use of its road; and the time for estimating the amount of such depreciation was by various rulings of the court determined to be the 7th of May. Were

the plaintiffs entitled to have the damages assessed as of that day, or should they be assessed as of some other time?

. The proposition seems to us perfectly incontestible, that the company acquired the title to lot 7 when the commissioners made their award and the amount thereof was deposited with the clerk. That was the time the land was actually taken and condemned under the charter. If the company occupied a portion of the lot with its track before this time, such possession was merely permissive. It had really acquired no rights even in that lot by purchase or condemnation. True, it had laid its track over the corner of the lot with the knowledge of the owner; that is, it was occupying the lot under a license. But we suppose it would have been competent for the owner at any time to revoke the license and resort to his legal remedies to obtain possession from the company. Probably a court of equity would not have interfered to enjoin the running of the cars over the track on the application of the owner, because he had acquiesced in the track being laid without insisting upon compensation being first made. But further than this we do not understand the owner had lost or waived any rights by the delay of the company to condemn the property. And if the company neglected to exercise the right of eminent domain and acquire the property, it certainly could not insist that the owner should not use or improve it until it actually condemned it under its charter. Nor were the owners bound to await the action of the company, but could make their improvements in view, of course, of the contingency that a portion of the property might be taken for railroad purposes. But upon what principle it can be said the owners had no right to improve their property and build their factory, even though the consequences might be to enhance the damages which the company would be compelled to pay when it finally condemned a portion of the land, we are at a loss to understand. There is no ground for saying that the plaintiffs proceeded in bad faith, and made an expensive improvement merely for the purpose of enhancing the

damages which the company would have to pay. They improved their property as they had a perfect right to do, and when the company proceeded to condemn lot 7 under its charter, the plaintiffs insisted that it should pay the damages to the adjoining premises resulting from the taking of this lot for railroad purposes. It seems to us that the claim is a just and proper one; fully sustained by the spirit and language of the charter. For the charter requires the commissioners to estimate the value of the land taken or required by the company, and all damages which the owner shall sustain or may have sustained by reason of the taking of the same for the construction and use of the road, considering the advantages as well as the disadvantages which may result therefrom to the owner. And, in estimating the damages sustained by the plaintiffs, the jury were properly advised to consider the value of lot 7, and the depreciation in the market value of the adjoining property, if any, at the time when, by the act of the company, it made this lot its own for all the purposes for which it was entitled to hold it under its charter. This is in accordance with the previous decisions in this state above referred to, and is plainly what the charter contemplates; and we fail to discover any fact or circumstance surrounding this case which calls for the application of a different rule. Suppose the planing mill and manufactory had been in successful operation when the negotiations took place between the plaintiffs and the agents of the company in respect to the acquisition of lot 7, but had been burned down before that lot was actually taken and condemned under the charter. In that event the company would not probably insist that the damages for the taking and condemnation should be assessed at any other time than when the commissioners made their award. The company would then doubtless have said that this was the time as to which the question of damages should be determined, since that was the time it actually exercised its right of taking the property under its charter. And this action of the company, depriving

the owner of his title and dominion over his property and appropriating it to the use of its road, really constitutes the " *taking,*" within the sense and meaning of the charter, for which compensation must be made.   The previous occupancy of a portion of lot 7 for its track, even with the consent of the owner, did not, however, make the lot the property of the company, or prevent the owner from insisting upon his legal remedies to recover possession.   The fact that the plaintiffs proceeded with their improvements after the company instituted steps to condemn lot 7, is relied upon to show that they ought not in justice and equity to recover for any depreciation in value of the adjoining premises in consequence of the taking of this lot.   But what could the plaintiffs do?   They desired to improve and use those lots for their factory.   True, they knew that the company had instituted proceedings to condemn lot 7, but those proceedings were wholly under the control of the company.   The company might abandon them at any time before the commissioners made their award.   The only thing they could do was, either to await the action of the company, which might neglect, as it had for years, to condemn the property, or to go on and improve and use it in that way which seemed most for their interests.   And when the company should take any portion of such property for the use of its road, they might well rely upon the constitution and the charter for securing them compensation for all damages thereby occasioned.   It is said they went forward with their eyes open, and, if they are subjected to inconvenience for the want of suitable room for the prosecution of the business of their mill, it is their own fault.   The answer to all this is, that the plaintiffs had the legal and moral right to use and improve their property, and if the necessities of the company for the use of lot 7 were such that it could afford to pay them the damages resulting from its acquisition, then the company could acquire it by the proper proceedings.   But we fail to see any ground

for imputing to the plaintiffs any negligence or wrongful use of their own in what was done by them.

Another question arises upon the exceptions taken to the admission of evidence of the use to which lots 8, 9 and 10 were devoted; of the business carried on by the plaintiffs upon the premises, and the effect which the taking of lot 7 had on this business done at the planing mill and door and sash factory. It is said by the counsel for the company, that this evidence was objectionable as tending to introduce an element of damages not proper to be considered in the assessment. The court instructed the jury that this evidence was admitted upon the ground that it might have a bearing upon the question of the market value of the property before and after the condemnation of lot 7 for railroad purposes, and upon that ground alone, and that the use to which the plaintiffs had applied the property was of no importance beyond its influence upon the question of the market value thereof, and any depreciation which resulted from the taking of that lot. I have had some difficulty upon the point whether the evidence was admissible even for the purpose stated by the court below, but am inclined to the opinion that it was. "The kind and amount of business transacted upon the premises by the plaintiffs were proper elements for the consideration of the jury in estimating the damages done" to the property by the taking of lot 7. Such evidence doubtless tended to prove the actual effect of the taking of that lot upon the residue of the property. The test question was, the real market value of the property before and after the taking of lot 7 by the company. This would determine the amount of damages which the plaintiff had sustained in the depreciation of the mill property in consequence of the taking of that lot. The question in principle is quite analogous to the one presented in *Snyder v. The Western Union R. R. Co.*, 25 Wis., 60. There witnesses stated what in their opinion was the depreciation in the market value of the farm in consequence of the railroad passing over it, together

with some reasons and facts why it was diminished in value. These facts and reasons were given by the witnesses to account for the actual decrease in the market value of the farm. So here, the evidence admitted in respect to the business done at the planing mill and factory tended to prove that this property was less valuable than it would have been had not lot 7 been taken for railroad purposes. And it is manifest that the use of the property, the kind and amount of business done, and the facilities for transacting it, would inevitably and necessarily enter into the estimate of the value of the property. They were elements proper for the consideration of the jury in estimating damages sustained by the plaintiffs in consequence of the taking of lot 7 by the company. See *Boston & Worcester R. R. Co. v. Old Colony & Fall River R. R.*, 3 Allen, 142–146; also *Price v. The Milwaukee & St. Paul R. R. Co.*, 27 Wis., 98; *Bigelow v. The West Wisconsin R. R. Co.*, id., 478. Of course the plaintiffs were not seeking to recover for damage done to their business, but for an actual injury to their property. If the mill property was not worth as much in the market in consequence of lot 7 being taken by the company, then this decrease in value measured the loss the plaintiffs had sustained by reason of the taking of the same. In this view, and with the qualification with which this evidence was submitted to the jury, I cannot see how it could have misled the jury as to the basis of their appraisal. For the jury were distinctly instructed to ascertain from the evidence the permanent depreciation in the market value of lots 8, 9 and 10, if any, by reason of the taking and appropriation of lot 7 for railroad purposes, to be estimated as of the day the commissioners made their award, less any benefits which might result to the plaintiffs from the construction of the drain made by the company.

Again, it is said that as the company took the whole of lot 7, the alleged depreciation in value of the adjacent premises could not extend beyond lot 8. But this is a mistake. See

*Welch v. The Milwaukee & St. Paul R. R. Co.*, 27 Wis., 108, where it is held that the owner is entitled to compensation for the injury to the whole property, and not merely for that to the separate lots over which the road was built. That decision in principle is applicable here.

These remarks sufficiently dispose of the exceptions which are deemed worthy of special notice.

*By the Court.*— The judgment of the circuit court is affirmed.

On a motion for a rehearing, defendant's counsel, besides re-arguing some of the questions considered in the foregoing opinion, also contended, 1. That the judgment in this case was erroneous and should be reversed because it includes the value of lot 7 and the damages to the adjacent lots in one sum; and that the verdict and judgment should state these two items of damages separately (P. & L. Laws of 1854, ch. 16). 2. That the judgment ought at least to be reformed so as to show by its terms that the company is entitled to the easement of the lands so long as it shall use the same for its road.

The respondent's counsel argued, 1. That the verdict was in effect a general verdict for damages upon two distinct causes of action, and that as defendant did not request that the jury be instructed to assess the damages separately upon each cause of action, there was no error in such general verdict (1 Chitty Pl., 8th ed., 411; 2 Allen, 230; 3 Cush., 58, 91, 107; 27 Wis., 478); that as no exception was taken to the charge in that respect or to the verdict at the time of trial, it is now too late to raise the question of irregularity in verdict and judgment (24 Wis., 139; 27 id., 478), and as no such exception is embodied in the bill of exceptions, the question was not before this court for adjudication. 9 Wis., 156; 8 id., 166. 2. That the judgment was strictly correct; that after the commissioners had filed their award and the company paid the same, or deposited the amount with the clerk of the circuit court, the title to the land passed to it by operation of law, and the proceedings

on appeal thereafter only affected the amount of compensation which plaintiffs should receive. 4 Wis., 268; 6 id., 514; 9 id., 450.

The motion for a rehearing was denied.