PARKS vs. THE WISCONSIN CENTRAL RAILROAD CO.

| 33 | 413 |
|----|-----|
| 79 | 76 |

| 33 | 413 |
|----|-----|
| 57 LRA | 944n |

CHANGE OF VENUE. (1, 2) *Affidavit for change of venue — Presumption as to " credibility " of affiant — Contents of affidavit.*
COMPENSATION FOR LAND TAKEN. (3–6) *Railway charter — " Value " of land taken — Constitutional rule — Injunction — Measure of damages — Evidence.*

1. Defendant's charter provides that on an appeal from the determination of commissioners appointed to appraise lands taken for its road, a change of venue shall be allowed by the court to which the appeal is taken, " in case any credible person shall make and file with the clerk of such court an affidavit, in which the affiant states that he knows or really believes that the appellant or appellee cannot, before the judge of such court, or before a jury of the county where such appeal shall be pending, obtain a fair trial." *Held,*

    (1) That every person is presumed to be " credible," until the con-trary is shown.

    (2) That upon production to the court, upon an appeal under said charter, of the affidavit of a credible person, stating, either upon knowledge or belief, *either one* of two facts or opinions: first, that such party cannot obtain a fair trial before the *judge* of such court, *or*, secondly, that such party cannot obtain a fair trial before a *jury* of the county in which such appeal is pending — the party is *abso-lutely entitled* to a change of venue.

    (3) That a *verified petition* for such a change of venue must be treated as an *affidavit.*

2. The petition of one of the directors of the defendant company, on such an appeal, states " that he believes that the defendant will not receive

a fair and impartial trial in the action in said county, for the reason that the inhabitants thereof are prejudiced in this cause against the defendant;" that several other actions of a like character had arisen, and had occasioned "much talk and ill feeling among the people of the county to the prejudice of the defendant, and were, at and before a special election held in said county on the 2d of December, 1871, largely canvassed and talked of among the people of said county, and were and still are the cause of much ill feeling in said county against the defendant." An affidavit of two other persons accompanying said petition, states that "of their own kowledge, the fact of the prejudice of the inhabitants of said county against the defendant is true," etc. *Held,*

. (1) That on account of the exceptional character of the above recited provision of defendant's charter, the court would be justified in holding defendant to a *strict,* if not a *literal,* compliance with the terms of that provision.

(2) That even upon a liberal construction of such provision, the *affidavits are insufficient,* because they do not, either in terms or in substance, express an opinion that a fair trial *cannot be had* in the county, or show that an impartial jury cannot be obtained therein by the use of the means which the law gives for that purpose.

3. Defendant's charter merely empowers the commissioners to determine " the value of the land taken " for the use of the company. *Held,* that these words will be construed as meaning the "just compensation " required by the constitution of this state, which includes " not only the value of the portion taken, but also the diminution of the value of that from which it is severed." *Bigelow v. W. W. Railway Co.,* 27 Wis., 478.

4. If the charter were not so construed, no land could be condemned under it (no adequate means being provided for ascertaining' the just compensation therefor), and persons over whose land the company had built its road, without any agreement as to the compensation, might restrain by injunction the operating of the road until the legislature should provide means for the lawful condemnation of the land.

5. Plaintiff being the owner of six forty-acre tracts *lying in one body,* over two of which defendant's road has been built, there was no error in permitting him to prove the diminution in value of the *whole* of said land by reason of such taking. *Welch v. Railway Co.,* 27 Wis., 108.

6. Nor was there any error in admitting testimony as to the situation of plaintiff's farm and buildings with reference to defendant's road, and the value of the trees standing on the land taken; nor in permitting witnesses to state their *reasons* for believing that the farm would be depreciated in value in consequence of the railroad running through

Parks vs. The Wisconsin Central R. Company.

it — such as the inconvenience and danger of crossing the track, the danger to horses and cattle, the liability of teams to be frightened, the danger from fire, etc. *Snyder v. W. U. R. R. Co.*, 25 Wis., 60.

APPEAL from the Circuit Court for *Portage* County.

The defendant is the successor of the Winnebago and Lake Superior Railroad Company, the charter of which is chapter 314 of the private and local laws of 1866.

The defendant having located the line of its railroad across two forty-acre lots of the plaintiff, the value of the land proposed to be taken by the defendant for the purposes of its railroad was appraised by commissioners duly appointed for that purpose pursuant to the charter of the defendant. The plaintiff appealed from such appraisal to the circuit court.

While the appeal was pending in that court, the defendant, by Mr. Wadleigh, one of its directors, presented a petition to the court, duly verified by himself, for a change of the place of trial of the cause. The more material portion of the petition is as follows: That he believes that the defendant will not receive a fair and impartial trial in the above entitled action in said county of Portage, for the reason that the inhabitants thereof are prejudiced in this cause against the defendant." The petition further states that several other actions of like character had arisen, and that these actions had occasioned "much talk and ill feeling among the people of the county to the prejudice of the defendant, and were, at and before a special election held in said county on the second of December, 1871, largely canvassed and talked of generally among the people of said county, and were and still are the cause of much ill feeling in said county against the defendant." The petition was accompanied by the affidavit of two other reputable citizens of the county, who depose that they know the contents of the said petition, "and that, of their own knowledge, the fact of the prejudice of the inhabitants of said county against the defendant is true; that the taking of land under the defendant's charter, and the valuation thereof, created a great

deal of prejudice against the defendant; and that the plaintiff and others similarly situated held public meetings for the purpose of combining together to defeat this and like causes, and created much bitterness of feeling against the defendant, and prejudice in this and like cases, and which feeling is largely extended in said county."

The plaintiff, on the hearing of such petition, read in opposition thereto the affidavits of six or seven reliable citizens, which, it is conceded, "fully established the fact that if any prejudice existed in the county against the defendant, it was only partial, and not of a general character, and was not directed against the defendant, but rather against persons who aided in obtaining right of way for the defendant, and in carrying elections to aid the defendant."

The court denied the prayer of the petition, and the cause was tried in the court to which it had been appealed. On such trial the plaintiff was permitted, against objection on behalf of the defendant, to establish his title to six forty-acre lots lying in one body (two of which are the lots across which the defendant's railroad is located), and to show, not only the value of the land condemned (consisting of about six acres of the tract), but also the diminution in value of the whole tract by reason of the taking and condemnation of such land. The testimony on the question of damages is sufficiently stated in the opinion. The trial resulted in a verdict which largely increased the appraisal of damages made by the commissioners. From the judgment for the plaintiff for the amount of such verdict, the defendant has appealed to this court.

*G. L. Park*, for appellant:

1. The application for a change of venue, being within the terms fixed by the charter, should have been granted. P. & L. Laws of 1866, ch. 314, sec. 27. 2. Under defendant's charter (sec. 18), the damages to be awarded by the commissioners are limited to the *value of the land actually taken.* This satisfies the constitutional requirement; and consequential damages to

other parts of plaintiff's land cannot be recovered, where the legislature has not so provided. Sedgw. on Stat. and Con. Law, 519–525; Sedgw. on Damages, 665–6, and note 2 to p. 662; *Cushman v. Smith*, 34 Me., 247; 35 id., 319; 35 N. H., 134; 25 Vt., 49; 21 Conn., 313; 10 Barb., 360; 16 id., 68, 273; 4 Coms., 195; *O'Connor v. Pittsburgh*, 18 Pa. St., 187; *Mifflin v. R. R.*, 16 id., 193; 21 id., 100; *Paul v. Carver*, 26 id., 223.    3. The court erred in allowing the plaintiff to prove distinct *items* of damage (51 Pa. St., 87; 31 Cal., 367), and also in allowing proof of various *causes* of damage of an entirely *speculative* character.    1 Redf. on R. W., 261, and cases in note 1; id., 290, and note 2.

*James O. Raymond*, with *E. L. Browne*, of counsel, for respondent, as to the question of damages, cited *Snyder v. W. U. Railway Co.*, 25 Wis., 60; *Bigelow v. W. W. Railway Co.*, 27 id., 478; *Welsh v. M. & St. P. R'y Co.*, id., 108.

LYON, J.    There are no exceptions to the charge of the circuit judge to the jury, and the bill of exceptions does not purport to contain all of the testimony.    Hence, we can only review the rulings of the circuit court on the petition for a change of venue, and on objections to the admission of testimony.    No other exceptions are saved by the bill.

1. Did the court err in denying the defendant's petition and motion for a change of venue?    Clearly it did not, if the question is to be determined by the general statute concerning the change of venue by reason of the prejudice of the inhabitants of the county in which the action is pending.    R. S. of 1849, ch. 95, sec. 1 (R. S. 1858, p. 1055; id., ch. 123, sec. 6; Tay. Stats., 1424–5, §§ 8 and 14).    The counter affidavits read on the hearing of the petition, showed conclusively that no sufficient cause existed for granting the prayer of the petitioner.    They prove that an impartial jury could easily have been obtained in Portage county to try the cause.    But it is claimed that the petition was not made under the general law on the subject, but was

made pursuant to the following provision of the charter of defendant, contained in sec. 27 thereof: " In all cases of appeal from the determination of the appraising commissioners, as provided in this act, a change of venue shall be allowed and rendered by the court to which such appeal shall be made, or by the judge thereof, in case any credible person shall make and file with the clerk of such court an affidavit, in which the affiant states that he knows, or really believes, that the appellant or appellee cannot, before the judge of such court, or before a jury of the county where such appeal shall be pending, obtain a fair trial."

Under this provision the defendant was absolutely entitled to a change of venue, if there was produced to the court on its behalf the affidavit of a credible person (and every person is presumed credible until the contrary appears), stating, either upon knowledge or belief, one of two facts or opinions, to wit : 1st, That the defendant could not obtain a fair trial before the judge of the court in which the action was pending ; or 2d, That he could not obtain a fair trial before a' jury of Portage county. The affidavits upon which the motion was founded contain no reference to the judge of such court. His fairness and impartiality are not questioned. Does the petition (which, being verified, is to be regarded as an affidavit), or the affidavit accompanying it, contain an averment, whether of fact or opinion, that the defendant could not have a fair trial before a jury of Portage county? Certainly neither of them contains such an averment in terms. For reasons which will be briefly stated, we should be justified in holding the defendant to a strict, if not a literal, compliance with the terms of this provision of its charter. It is an exceptional provision. It gives a right or remedy in this class of actions in which this defendant is a party, which is not given in any action to which this defendant is not a party. No safe-guards are provided to prevent the grossest abuses under it. Unlike a kindred law, the party may procure a change of venue under this provision of the defend-

Parks vs. The Wisconsin Central R. Company.

ant's charter, without insulting the judge, for the petitioner is not required to give a reason for his belief. The provision must have been enacted for the benefit of the defendant exclusively, for we never heard of a case where the owner of the land condemned hesitated or feared to have his damages assessed by a jury of the county in which the land is situated. There is no good reason why this extraordinary remedy should be given to this defendant, and withheld from every person or other corporation, litigants in the courts of this state, who are not so fortunate as to have this defendant for an antagonist. The provision is also objectionable in principle, in other respects. It matters not that an affidavit under it is utterly false, the opposite party is not permitted to show that it is false. If the affidavit be sufficient in form, the case must go to another county, and the opposite party must suffer the delay and increased trouble and expense which almost invariably result from such removal. The provision was doubtless enacted inadvertently, escaping the scrutiny of the legislature and the executive, and its presence in this charter is another proof that the people ordained wisely, when, by the late amendment to the constitution, they took from the legislature the power of granting corporate powers or privileges, in cases like this, by special or private laws.

But, giving to the provision of the charter under consideration a very liberal construction in favor of the defendant, the petition and affidavits do not come up to the requirements of the law. A sufficient affidavit under this provision must at least express an opinion, in substance, that a fair trial cannot be had before a jury of Portage county, if the partiality or prejudice of the jury is, as in this case, alone complained of. The affidavits in question do not express any such opinion. They show that very many people in Portage county, by reason of prejudice and ill feeling towards the defendant, were not competent jurors in the case, but they fail entirely to show that by the exercise of the means which the law gives for that purpose,

such as the rights of examination and challenge, an impartial jury could not readily have been obtained in that county.

The petition and affidavits being insufficient, both in substance and form, the circuit court properly denied the application for a change of the place of trial.

2. The next position of the defendant is, that, inasmuch as its charter (sec. 18) only gives the commissioners power to determine the value of the land taken, which, it is alleged, is all they did in this case, and inasmuch as this appeal is only from an appraisal of the land actually condemned, it was incompetent for the circuit court to try any other issue; and hence that the evidence of ownership of the residue of the plaintiff's farm, and of the diminution in the value thereof by reason of the taking of such land by the defendant, was improperly received.

In *Bigelow v. The West Wisconsin Railway Co.*, 27 Wis., 478, we had the same question before us on a railroad charter, the language of which, in respect to the appraisal of the value of land condemned, is substantially, if not literally, identical with the language employed in the charter of this defendant. After much consideration, we there held that the term "value of the land taken," as used in the charter, means just compensation for such land, and that "compensation includes, not only the value of the portion taken, but the diminution of the value of that from which it is severed, also." Hence, the evidence objected to was competent, in that it tended to prove "the value of the land taken," or, at least, one element of that value.

Were we to hold that the value of the land should have been assessed, pursuant to the charter, upon the narrow basis for which the counsel for the defendant contends, we should be compelled to hold also, that land cannot be condemned at all for the use of the defendant, for the reason that its charter fails to provide adequate means to ascertain what would be just compensation therefor, within the meaning of the constitutional provision on that subject. The result would be that the plaintiff, or any other person in like situation, would, at once, be en-

Parks vs. The Wisconsin Central R. Company.

titled to an injunction restraining the defendant from operating its railroad over his land, until proper legislation could be procured to enable it to obtain a lawful condemnation thereof. Neither the language of the charter, nor the interests of the defendant or of the public, require, or would justify, a construction of the charter which would necessarily lead to such a result.

We adhere to the principles decided, in *Bigelow v. Railway Company*, and hold that testimony that the balance of the plaintiff's land (of which the land condemned is part and parcel) was diminished in value by reason of such taking and condemnation, was properly received by the circuit court. See also *Welch v. The Mil. & St. Paul R'y Co.*, 27 Wis., 108.

3. Considerable testimony was received under objection, showing the situation of the plaintiff's farm and buildings with reference to the railroad, and the value of certain fruit trees standing upon the land taken; and many reasons were given by the witnesses why they thought the farm was depreciated in value in consequence of the railroad running through it. Amongst these were mentioned the inconvenience and danger of crossing the track, danger to horses and cattle, and from fire, liability of teams to be frightened, inconvenience from noise, dust, smoke, etc., and some other reasons of like character not necessary to be particularly stated. Some of this testimony was called out on the examination in chief of the plaintiff's witnesses, but the greater portion of it was elicited by the cross examination of the witnesses on both sides.

The testimony has been carefully examined, and it is sufficient to say that we find none offered by the plaintiff and received, which was not competent under the decision of this court in *Snyder v. The Western Union R. R. Co.*, 25 Wis., 60.

Upon the whole case, so far as it is before us on this appeal, we find no error in the rulings of the circuit court, and must therefore affirm the judgment.

*By the Court.* — Judgment affirmed.