BLESCH vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

*August 16, 1879 — February 3, 1880.*

RAILROADS: TRESPASS TO LAND. *(1) Res adjudicata. (2) Rule of damages for lands taken for road, by trespass.*
SPECIAL VERDICT. *(3) Abuse of right to such verdict.*

1. It is *res adjudicata* in this case (43 Wis., 183), that plaintiff is entitled to recover all the damages he had sustained up to the commencement of the action, from defendant's trespass in constructing, maintaining and operating its railroad on his land in a public street (only six inches in width of the track being upon said land), and that the fact that a part of the road was at the same time constructed and operated upon adjoining lands not owned by the plaintiff, cannot be considered for the purpose of lessening the damages.

2. Under the constitution and laws of this state, where lands are taken for the purpose of building and operating a railroad thereupon, the "just compensation" which the railroad company is required to pay, includes "the value of the lands actually taken, and the damages sustained by

the owner by reason of the taking thereof " for such purpose; and the fact that the value of the owner's other lands, adjoining those taken, and used in connection with them, would be diminished by the proximity of the road, if it were built close to but not upon his land, cannot be considered for the purpose of lessening the damages; and an equally liberal rule in favor of the land-owner applies in case of a trespass by an illegal taking for the same purpose.

3. The court below having improperly permitted questions to be propounded to the jury (for special verdict) by which they were required to state, not only the *gross* amount of plaintiff's damages, but the several *items* composing it, and having twice sent them out to reconsider their verdict in consequence of inconsistencies in the answers, and the jury having made successive material changes in their assessments with no apparent reason except to make the general and special assessments consistent, this court holds that there was an abuse of the statutory right to a special verdict, and reverses the judgment on that ground.

APPEAL from the Circuit Court for *Brown* County.

Plaintiff is the owner of certain lots in the city of Fort Howard, on which are located his dwelling and brewery, and whose easterly front is on Pearl street. In November, 1862, defendant built a railroad track along Pearl street; and oppo- site plaintiff's close, without his consent, it so located its track that a part thereof six inches in breadth (as the complaint alleges) is west of the middle of the street, and so upon land the fee of which is in the plaintiff; and from that time down to the commencement of this action in September, 1874, it had continuously run its locomotives and cars over said track; and no proceedings had been had to condemn the land. This action was for damages for the trespass.

On a former trial, plaintiff recovered a judgment for $5,425; but, on defendant's appeal, this court reversed the judgment and awarded a new trial. See 43 Wis., 183–197.

On the second trial, the court, at plaintiff's request, in- structed the jury substantially as follows:

2. That at the time of the construction of the road plaintiff had a vested private right of free access to and egress from his said lots and the buildings thereon, over and along

Pearl street in front of the lots, "as the same was and would have continued to be according to the mode of its original use and appropriation by the public."

3. That this was a right of property which could not be materially impaired or destroyed without plaintiff's consent, except upon payment to him of due compensation; and therefore, if defendant's road changed the mode of the original use of the highway, or if it was thereby appropriated by the public to new vehicles and methods of transportation, so as materially to impair plaintiff's said right, he was entitled to recover such damages as would compensate him for the injury.

4. That the measure of these damages was the difference between the annual value of plaintiff's premises with the railroad constructed and operated as it was, and what such annual value would have been had not the railroad been on said street during that time; and that in determining such diminution in the annual value, they might consider the manner in which the road was built along said street in front of said premises, the manner in which and the extent to which it was used and occupied at that place by defendant's cars and locomotives, the situation of the premises in reference to that portion of the road, and the effect which defendant's occupation and use of that portion of the road had upon the reasonable use and enjoyment of the premises and of the improvements thereon.

5. That if defendant's said right of property was materially impaired, they must allow him the damages resulting therefrom from the date of the building of the road in front of his premises until the commencement of the action.

6. That they might consider the purposes for which the premises were used, whether for the business or the residence of plaintiff and his family, and the extent to which the construction and operation of the railroad, by impairing plaintiff's right of property in the street, interfered with the use and enjoyment of the premises; but that they were to consider the

business transacted by the plaintiff on the premises only for the purpose of determining the annual rental value.

7. That if the running of defendant's cars and locomotives on the street in front of plaintiff's premises created smoke and cast it on the premises, so as materially to impair the reasonable use and enjoyment thereof, they might allow plaintiff reasonable compensatory damages therefor. "The damages you find, if any, on this ground, must be the actual damages, and you must say what the plaintiff ought to have in money, and what the defendant ought to pay, if anything, in view of the discomfort or annoyance to which the plaintiff has been subjected by such smoke during the period between the construction of this railroad in front of his premises and the commencement of this action, avoiding all speculative and fanciful annoyances as grounds of damages. If you find that any damages were sustained by the plaintiff from these causes, you may include it in your estimate of the depreciation of the annual value of the premises under other instructions."

8. That in assessing the damages, if any, however, they must be careful not to include any item more than once, and must give plaintiff actual compensation for his injury, but no more.

9. That in no event must the damages exceed the sum which would be obtained by determining the difference between the annual rental value of the property with the railroad constructed and operated as it was, and what that value would have been if there had been no railroad on Pearl street during that time.

10. That plaintiff had a right to put any lawful improvements on the property after the railroad was built on his land in the street; and that, if any such improvements were made, they were to be considered in determining the subsequent rental value of the premises.

11. That if the construction and operation of defendant's road in front of plaintiff's premises had depreciated their annual value, the jury could not "apportion the damages for

these injuries . according to the width of the strip actually taken and occupied, but must award damages to compensate plaintiff for the whole amount of injuries sustained."

12–14. That if the plaintiff enjoyed any peculiar benefits from the railroad being on this street, such benefits must be deducted from his damages; but that benefits common to the whole community were not to be considered.

15. That the damages allowed to plaintiff must not in any case exceed the market value of his premises when the railroad was constructed.

17. That no remote or speculative damages could be allowed in the action, but only such as were the natural and proximate effect of defendant's acts.

"19. The testimony shows that the effect upon the plaintiff's property rights, as hereinbefore defined, would have been the same whether the railroad actually encroached upon the western side of the street or not. You will therefore assess the damages, if any you find, according to the foregoing instructions, however you may find upon the question of encroachment, which you will determine as a separate question. That is to say, if you find the plaintiff has been injured in his property right, under the foregoing instructions, you will determine the damages for such injury upon the principles hereinbefore stated, whatever you may think as to whether the railroad is upon the western side of the center of the street. You will then determine whether the railroad, or any portion of it, is on the western side of the center of the street; and, if so, how much."

At defendant's request, the court instructed the jury that plaintiff could not "recover anything on account of the depreciation of the rental value of the property caused by danger thereto from fire from defendant's railway."

Of its own motion the court also gave the following instructions:

"Much has . been said in the argument of this case upon the

Blesch vs. The Chicago & Northwestern R'y Co.

subject of remote and fanciful injuries and speculative dam-
ages, and reference was had specially to testimony offered on
the part of the plaintiff tending to show that horses were lia-
ble to be frightened by passing trains, and the plaintiff's
buildings were in danger from fire from the locomotives.
Now, even if you should find that any such inconveniences or
dangers were occasioned by the construction and operation of
the railroad, they cannot of themselves form a basis for the
assessment of damages. By this I mean that you cannot
allow any sum of money as damages for the injury from fire,
nor any sum as damages for the liability of horses
being frightened by passing trains, nor any sum for any other
inconvenience or annoyance which might or might not hap-
pen, these being remote or contingent injuries, for which the
law does not allow damages to be assessed. They are only to
be considered for the purpose of determining whether or not
the annual rental value of the plaintiff's property on Pearl
street was diminished in consequence of the defendant's rail-
road being operated as it was, in front of the plaintiff's prem-
ises. . . . Whatsoëver of these hazards and dangers you
may find to have caused a depreciation in the rental value of
the plaintiff's property, if you do so find, his loss is the same.
If, in consequence of its exposure to these remote injuries,
the value of the use and enjoyment of the property has been
diminished to any extent, then such decrease in value meas-
ures the actual loss to the owner. It matters not which of the
dangers and inconveniences, if you find they were occasioned
by the railroad, caused the depreciation, whether exposure
to fire, inconvenience from trains, or danger to persons and
property, or whether any or all of these depreciated the rental
value. The real question is, whether, in consequence of the
railroad where it is, and operated where it was, the rental
value of the property was really diminished, and, if it was,
how much."

For the purposes of a special verdict, the court submitted

to the jury certain questions proposed by the plaintiff, others proposed by the defendant, and others drafted by the presiding judge himself.   These, with the answers first given thereto, were as follows:

I. Questions proposed by the plaintiff:

1. What, if any, was the total amount of damages suffered by the plaintiff, between November 10, 1862, and September 20, 1873, on account of the construction and operation of the railroad in front of the plaintiff's premises, in getting out ice? [Ans. $200.]

2. What was the depreciation in the value per year of plaintiff's premises for the purposes of the wholesale business of a brewery, from the construction and operation of defendant's railroad from November 10, 1862, to September 20, 1873, except as to injuries in getting out ice?   [Ans. None.]

3. What was the depreciation in value per year of the plaintiff's premises for the purposes of his retail business, from the same causes, for the same period, exclusive of any increased cost in getting out ice?   [Ans. $156 per year; total, $1,694.33.]

4. What was the depreciation of the value per year of the plaintiff's premises as a residence for himself and family, under the instructions, for the same time?   [Ans. $25 per annum; total, $271.52.]

5. What was the total amount of damages to the plaintiff by reason of the construction and operation of the defendant's railroad, under the instructions given you?   [Ans. $3,090, composed of items Nos. 1, 3, 4, and third question asked by court.]

6. Do the ends of the railroad track project west of the center of Pearl street, upon the plaintiff's premises?   If so, how much?   [Ans. Yes.   Average, four inches.]

7. Did the edges of the cars of the defendant's railroad, from November 10, 1862, to September 20, 1873, project over the center of the street in passing in front of the plaintiff's

Blesch vs. The Chicago & Northwestern R'y Co.

premises? If so, how much? [Ans. Yes. Average, ten inches.]

II. Questions proposed by the defendant:

1. If, you find that defendant's railway, as maintained and operated prior to the commencement of this action, has caused any depreciation in the annual rental value of plaintiff's premises, how much of such depreciation do you find was caused by the frightening of horses, and by preventing people from coming with teams to plaintiff's brewery to purchase beer or sell barley on account of the liability of horses to be frightened by the cars or engines on defendant's railway? [Ans. Nothing for frightening horses; only the depreciation on retail business as answered in plaintiff's question No. 3.] And how much of such depreciation do you find was caused by the casting of smoke upon or over the plaintiff's premises? [Ans. Nothing.] And how much by the delay of plaintiff's men and teams in getting ice from the river? [Ans. Amount is as answered in plaintiff's question No. 1.] And how much by the increased danger to plaintiff's premises from fire? [Ans. Nothing.] And how much was attributable to the obstruction caused by the railway to the plaintiff, his family, servants and teams, in going to and from his premises, exclusive of any interference in getting out ice? [Ans. The same as answered in plaintiff's question No. 4.]

2. Did the maintenance and operation of defendant's railway in front of plaintiff's premises depreciate the annual rental value of the plaintiff's premises prior to the commencement of this action; and if so, on what grounds or for what causes do you find that such depreciation resulted? [Ans. Yes. Caused by the cars being left on the track opposite the plaintiff's premises, and the general operation of the defendant's railroad.]

3. Did the defendant's railway, as the same was maintained and operated prior to the commencement of this action, cause any depreciation in the annual rental value of the plaintiff's

premises for the purpose of manufacturing and selling beer, except by reason of frightening horses and causing delay in getting ice from the river? [Ans. No, except the plaintiff's retail business.]

4. From the time of the construction of the railway to the commencement of this action, what was the difference, if any, between the annual rental value of the plaintiff's premises, with the railroad as it was, and operated as it was, and what the annual rental value of his premises would have been if the railway had been located and operated on Pearl street, but wholly east of the center line of Pearl street, opposite the plaintiff's premises? [Ans. None.]

5. Would the injury to the annual rental value of the plaintiff's premises, prior to the commencement of this action, have been any less if the defendant's railway had been situated on Pearl street, but wholly east of the center line of Pearl street; and if so, how much less? [Ans. None.]

6. Did the ties of the defendant's railway, prior to the commencement of this action, extend west of the center line of Pearl street in front of the plaintiff's premises; and if so, how much? [Ans. The same as is answered in plaintiff's question No. 6.]

7. Has the defendant been in the possession of the same ground upon which its railway is now located and operated, since the time the railway was constructed? [Ans. Yes.]

8. Did the plaintiff manufacture and sell more beer after the construction of the railway than before? [Ans. Yes.]

9. From the time of the construction of the defendant's railway to the commencement of this action, what was the difference, if any, between the annual value of the use of the plaintiff's premises to him, with the railroad as it was and operated as it was, and what the annual value of the use of the same to him would have been if the railroad had been located and operated in Pearl street but wholly east of the center line thereof? [Ans. No difference.]

Blesch vs. The Chicago & Northwestern R'y Co.

III. Questions drafted by the circuit judge:

1. If in your answer to the 8th of the defendant's questions, you should find that the plaintiff manufactured and sold more beer after the construction of the railway than before, state what causes produced such increase of his business, and state particularly whether or not such increase was occasioned by the benefits of the railroad to the community in general, or by the location and operation of the railroad through Pearl street in front of the plaintiff's premises. If from either of these, which of them? [Ans. Yes. By increase of population.]

2. If you find that the plaintiff made and sold more beer after the construction of the railroad than before, state whether such increase of his business was greater or less than it would have been if the railroad had not been located and operated upon Pearl street? [Ans. Less.]

3. If you find that the annual rental value of the plaintiff's premises described in the complaint was actually depreciated in consequence of the construction and operation of the defendant's railroad through Pearl street, in front of said premises, what do you find to have been the difference in amount between said rental value, with the railroad where it was and operated as it was, and what the rental value of said premises would have been from the 10th day of November, 1862, until the 20th day of September, 1873, had not the railroad been located and operated through Pearl street?

[Ans. 5100 dollars, less

     2010 in plaintiff's questions Nos. 2, 3, 4.

  —————

     $3090.]

The other facts in regard to the verdict are sufficiently stated in the opinion.

The court refused to set aside the verdict, and rendered judgment thereon in plaintiff's favor for $3,251.96 damages, with costs; and defendant appealed from the judgment.

*William Ruger*, with whom was *Geo. B. Smith*, for the

appellant, as to the rule of damages, argued substantially as follows:

If the railway encroached so that an action of trespass would lie, the measure of damages was the natural and proximate injury caused by the maintenance and operation of the railway *on plaintiff's land.* But the question of encroachment was ignored in plaintiff's proofs as to damages; the instructions admitted that the damages sought to be recovered were not attributable to the trespass; and the jury were directed to assess the damages without respect to it. It was maintained that plaintiff had property rights extending beyond his land; and, to show a violation of these rights, and injury resulting therefrom, testimony was received as to the manner of constructing, maintaining and operating the railway in the street at large, and how, by physically obstructing travel, and by frightening horses, it prevented people from coming into the street to do business, and delayed plaintiff in drawing ice across the street, beyond the limits of his land. From the rulings receiving this testimony, the charge relating to plaintiff's private rights in the street, the instructions as to the grounds and measure of damages, and the questions submitted for special verdict, in respect to damages, the jury must have inferred that plaintiff had a private legal right to go and come, personally or by his agents or servants, through all parts of the street, without obstruction or delay; that he also had a legal right to such benefits as would accrue to him from public travel on the street; and that whatever obstructed such travel so as to affect its volume and the incidental benefits flowing from it, was in violation of plaintiff's property rights in the street at large. But in fact plaintiff's right to go through the street beyond the limits of his own land is a mere *public* right, possessed by him in common with all other citizens, and not in any way incident to the ownership of property on the street. Concede that he had a private right, such as a stranger has not, to pass over that part of the street of which he owned

AUGUST TERM, 1879.　179

Blesch vs. The Chicago & Northwestern R'y Co.

the fee; concede also that, *as against his grantor*, he had a right, by virtue of his deed, to pass as far as the limits of the land dedicated by his grantor for a street: this is the limit of the rights in the street which he can claim under his deed. All other rights he must get as one of the public, through the dedication made to the public. R. S., sec. 2263. The public may abandon the right thus acquired, by vacating the street or any portion of it; and if this be done, the title of the party making the dedication, or of his grantees, becomes again a fee simple divested of all servitudes or easements. Washb. E. & S., 2d ed., 214; *Kimball v. Kenosha*, 4 Wis., 321. The decisions in *Hegar v. Railway Co.*, 26 Wis., 624, and *Hobart v. Milwaukee City R. R. Co.*, 27 id., 194, 201–2, are in accord with this view. The opinion of this court on the former appeal in the present case also shows that the court regarded the private rights of plaintiff as confined to his land, and the trespass upon his land as his only ground of complaint. See also Dillon on M. C., sec. 527 and note 3, sec. 556; *Davidson v. Railroad*, 3 Cush., 105–6; *Proprietors, etc., v. Railroad Corp.*, 10 id., 388–92; *B. & W. Railroad Corp. v. Old Colony Railroad Corp.*, 12 id., 606–9; *People v. Kerr*, 27 N. Y., 188; *Kellinger v. Railroad Co.*, 50 id., 206. The value of private property in general is more dependent upon the exercise of public rights by the public than upon the exercise of such rights by the owner of the property; but it has never been held that the offer of inducements by which the public are influenced to refrain from the exercise of the public rights, constitutes a violation of any private right incident to the property, or gives the owner any right to compensation. If this were a good ground of action, plaintiff would likewise have an action for the establishment of rival breweries, or for the discontinuance of the ferry which the evidence shows to have existed near him, and for the establishment of a free bridge which drew away travel from Pearl street. *Proprietors, etc., v. Railroad Corp.*, and *B. & W. Railroad Corp. v. O. C.*

*Railroad Corp., supra; Hatch v. Railroad Co.*, 25 Vt., 58–68; *Richardson v. Railroad Co.*, id., 472–6; *Lansing v. Smith*, 8 Cow., 146–51, 157–8; *Patten v. Railway Co.*, 33 Pa. St., 426. 2. It is settled in this state that injuries resulting from noise, danger of fire, the frightening of horses, etc., causing loss of patronage in business, are not grounds for the assessment of damages. *Snyder v. Railroad Co.*, 25 Wis., 60; *Hutchinson v. Railway Co.*, 37 id., 610–11; *S. C.*, 41 id., 541; 555. The rule thus settled here is the general rule upon the subject. *Presbrey v. Railway Co.*, 103 Mass., 1, 6–7; *Walker v. Railway Co.*, id., 14, 15; *Proprietors, etc., v. Railway Co.*, and *B. & W. Railroad Corp. v. O. C. Railroad Corp., supra; Stadler v. Milwaukee*, 34 Wis., 98; and the other authorities cited *supra*.

For the respondent, there was a brief by *Hastings & Greene*, and oral argument by *Mr. Hastings:*

The damages do not depend on the width of the strip of plaintiff's premises which defendant occupied, but must be measured by the direct and proximate injury caused to his property rights by the operation of the road in front of his premises. It is not true that, had the road been wholly on the eastern side of the street, there would have been no liability. When the power of eminent domain is exercised for a public use, but under the control and for the emolument of a private corporation, such corporation is liable for all the direct and proximate consequences to private property, whether it physically occupies the property or not. The test is, Has there been such an injury to property rights as would be actionable at common law if the injury had been inflicted by an individual without legislative authority? *Alexander v. Milwaukee*, 16 Wis., 248, 255–58; *Hobart v. Railroad Co.*, 27 id., 198; *Arimond v. Canal Co.*, 31 id., 317, 335; *Delaplaine v. Railway Co.*, 42 id., 214; *Eaton v. Railroad Co.*, 51 N. H., 504, 511–12; *Tinsman v. Railroad Co.*, 2 Dutch., 148; *Fletcher v. Railroad Co.*, 25 Wend., 462; *Mahon v.*

*Railroad Co.*, Hill & Den., 156; *Robinson v. Railroad Co.*, 27 Barb., 512; *Grand Rapids, etc., Co. v. Jarvis*, 30 Mich., 308; *Cincinnati, etc., Railway Co. v. Cumminsville*, 14 Ohio St., 523; *E., L. & B. S. Railroad Co. v. Combs*, 10 Bush, 382 (19 Am. R., 67); *Protzman v. Railroad Co.*, 9 Ind., 467; *E. & C. Railroad Co. v. Dick*, id., 433; *Pumpelly v. Canal Co.*, 13 Wall., 166; *McCarthy v. Board of Works*, L. R., 7 C. P., 508; *S. C.*, L. R., 8 C. P., 191; *S. C.*, L. R., 7 H. of L., 243; *E. & W. Ind. Docks and B. J. Railway Co. v. Gattke*, 3 Eng. L. & E., 59; *Regina v. Railway Co.*, 2 Ad. & El., N. S., 347; Cooley's Con. Lim., 556, note 2; Redfield on R. W., 2d ed., 175; Wood on Nuisances, §§ 751–2. Even if the constitution does not protect the land owner against consequential injuries where his land is not taken into the possession of the company, yet legislative authority to inflict such injury is not embraced in a statutory permission to build a railroad through a street. The company will remain liable for such injuries unless expressly exempted by the statute from such liability. *Fletcher v. Railway Co., Mahon v. Railway Co., Robinson v. Railway Co.*, and *Delaplaine v. Railway Co., supra; Chapman v. Railroad Co.*, 33 Wis., 629; 64 Barb., 55; Wood on Nuis., § 750. But even if it were true that defendant would not have been liable at all if the road had not encroached at all upon plaintiff's lots, still the cases are uniform in holding that when a railroad is built upon the soil of an adjoining owner, in a highway, such owner can recover compensation for the whole injury resulting from the operation of the road to his easement in the street and to his adjoining premises — such premises, whether in or outside of the street, being considered one tract, and the right to have the highway continue according to the mode and for the uses of its original appropriation being a right of property annexed to his premises, and "as much property as the lot itself." *Cox v. Railroad Co.*, 48 Ind., 178; *I., B. & W. Railway Co. v. Hartley*, 67 Ill., 439; *Mix v. Railway Co.*, id., 319; *City of Pekin v. Bre-*

*reton*, id., 477; *St. Louis, etc., Railway Co. v. Capps*, id., 607; *E., L. & B. S. Railroad Co. v. Combs, supra; Harrington v. Railroad Co.*, 17 Minn., 215; 18 id., 260; *S. P. Railroad Co. v. Reed*, 41 Cal., 256; *Williams v. Railroad Co.*, 16 N. Y., 110; *Mahon v. Railroad Co.*, 24 id., 658; *Ford v. Railroad Co.*, 14 Wis., 609; *Hobart v. Railway Co., Chapman v. Railroad Co.*, and *Delaplaine v. Railway Co., supra;* Cooley's Con. Lim., 446–9. In all these cases the compensation allowed included the injury *from the operation of the road*, and not merely the increased injury from the *proximity caused by the taking.* The only case which limits the recovery to such increased injury is *Walker v. Railway Co.*, 103 Mass., 10, 15. Two things are to be observed of this case: (1) It was a statutory proceeding to acquire the title. The taking was lawful. (2) It is based on the doctrine, "no physical appropriation, no damages," which is unsound. 16 Wis., 248; 31 id., 317–335; 42 id., 214. Every decision of this court prescribing the rule of damages for consequential injuries is wrong, if the doctrine of this Massachusetts case is right; for in every case the road might have been run near the premises, without touching them, so as to produce some injury. 33 Wis., 629; Field on Dam., 668.

The appellant's counsel in reply:

Recognizing the fact that the common law was otherwise, Massachusetts and some other states, as well as England, have enacted statutes providing for compensation when lands are injuriously affected by a railway without actual encroachment. Under such statutes, the certain, direct and natural damage resulting from the mere proximity of the railway may be recovered; for the franchise is taken subject to this condition. But at common law damages so resulting from lawful acts have never been deemed actionable. Cooley's Con. Lim., 541–3; Sedgwick on Con. and Stat. Law, 519–23; Potter's Dwarris, 393; 1 Redfield on R. W., 294, pl. 1, 2, and note 4; Pierce on Am. Railway Law, 171, 198; Dillon on M. C., secs.

556–7, 576–7; Wood on Nuis., §§ 753–7; *Carson v. R. R. Co.*, 35 Cal., 325; *Stadler v. Milwaukee*, 34 Wis., 98; *Whittieer v. Railway Co.*, 38 Me., 26; *Boothby v. R. R. Co.*, 51 id., 320; *Richardson v. Railroad Co.*, 25 Vt., 465, 476; *Hatch v. Railroad Co.*, id., 40, 58, 68; *N. Y. & E. Railroad Co. v. Young*, 33 Pa. St., 175; *Patten v. Railway Co.*, id., 426; *Stevens v. Railway Co.*, 5 Vroom, 549–53. 2. Where land is taken and occupied by the railroad company, the common-law rule of damages is, the value of the use of the portion occupied, and the certain, direct and proximate injury to the use of the residue by reason of the occupation of such part. The statutory rule is conformable. The language of such statutes in general is, *the value of the land taken*, and the damage sustained by the owner *by reason of the taking thereof*. Laws of 1872, sec. 16; *Robbins v. Railroad Co.*, 6 Wis., 642; *Hutchinson v. Railway Co.*, 37 id., 609–11; *S. C.*, 41 id., 541. Suppose that plaintiff had owned a hotel-stand which, prior to the construction of the railway, was located at a terminal point or station on a much traveled thoroughfare; and that, in constructing a railway, a small fraction had been taken from one corner of the rear of the premises. The value of the property might not be appreciably affected by the taking of such small portion of land, and yet the property as a hotel-stand might be utterly destroyed by the change worked by such railroad in the modes of travel. In such a case, could it be maintained that a recovery could be had of the whole amount of damage to the plaintiff resulting from the railroad, because a fraction of his land was taken? It has never been so ruled. The fact that it is sometimes difficult to determine the amount of direct and natural damages resulting to plaintiff *from the trespass on his land* (as distinguished from the losses resulting from other causes, which are not actionable), is no reason why the attempt should not be made. *Hobart v. Railway Co.*, 27 Wis., 200. It is not so difficult in the present case as in many of the cases, to determine the extent to which plaintiff's private rights have

been violated, and to assess the damages therefor. *Janssen v. Lammers*, 29 Wis., 91–2; *Thomas v. Kenyon*, 1 Daly, 132; *Partenheimer v. Van Order*, 20 Barb.; 479; *Rogers v. Ins. Co.*, 1 Story, 603; *Russell v. Tomlinson*, 2 Conn., 206; 2 Waterman on Trespass, 292; Angell on W. C., 140 *c*, and note 4.

The following opinion was filed September 2, 1879.

TAYLOR, J. This case comes before this court a second time upon appeal by the defendant; and, by consulting the arguments of counsel on the former appeal, and the decision of the court, it will be seen that the same questions as to the rule of damages applicable to the case were discussed upon the former appeal that were discussed upon this. So far, therefore, as the decision in the former appeal settled any question as to the extent of damages which the plaintiff may recover in this action, it is *res adjudicata* in this case.

On the former appeal it appears that the learned circuit judge charged the jury, among other things, " that the jury could not apportion the damages for these injuries according to the width of the strip actually taken and occupied by the railroad, but must award damages to compensate the plaintiff for the whole amount of injury sustained;" and that the court refused to give the jury the following instruction: " Plaintiff can recover only such amount of damages as he has sustained by reason of the operation of defendant's road on that portion of the street lying west of the center line and in front of his premises. The company had a right to use and operate their railway on the eastern side of the street."

This court held that such instruction given was a proper instruction as to the rule of damages, and that the instruction requested by the defendant was properly refused. In commenting upon this question of damages, Justice COLE, who delivered the opinion of the court, says:

" In constructing its track upon the plaintiff's land without

his consent, and without making compensation, the company was clearly a wrongdoer, and is liable for all the certain, direct and natural damages resulting to the plaintiff from its unlawful act. The damages recoverable in the action are, of course, for past injury to the freehold and possession; that is, the pecuniary loss which the trespass had caused the plaintiff in the use and enjoyment of his property when the suit was commenced. Laying out of view collateral questions, for the purpose of this case it seems to be sufficiently accurate to say, that the measure of damages would be the difference between the annual rental value of the premises with the railroad track where it was, and the road operated as it was, and what the rental value of the premises would have been had not the road been upon his land.

"The counsel for the company argued that the plaintiff should recover such damages only as resulted from the six-inch road-bed encroachment upon his premises; such damages as the plaintiff sustained by reason of the operation of the road on that portion of the street lying west of the center line thereof and in front of his premises. If by this it is meant that the plaintiff could recover only a fractional part of the damages which the construction and operation of the road worked to his premises, a bare statement of the proposition is sufficient to show its unsoundness. A railroad is an entire thing, and it is impossible for any human intelligence to separate the loss or injury which its operation causes, apportioning so much to one portion and so much to another. But we suppose the plaintiff was entitled to recover all the loss which he had sustained by reason of the trespass of the company, and in consequence of the road being operated on his land, according to the rule above stated."

This clearly settles the question for this case, that the plaintiff is entitled to recover all the damages he has sustained by reason of the trespass of the company and in consequence of the road being operated on his land, and that the court or jury

cannot take into consideration, for the purpose of lessening such damages, the fact that a part of the road was at the same time operated upon adjoining lands not owned by the plaintiff.

No new authorities have been cited upon this point on the present argument, and but one has been found by the court bearing directly upon the question. In the case of *Kucheman v. Railway Co.*, 46 Iowa, 366-377, two of the judges concur in holding to the doctrine contended for by the appellant in this case. Justice BECK dissented from this opinion of the two judges, and the other two judges held that the owner of land adjoining a street could not recover any damages on account of the location and use of a railroad along the street, whether the same was on the side of the street adjoining the plaintiff's land or not. The two learned judges who held that when the whole railroad is not located upon the plaintiff's land the damages must be apportioned, admit the difficulty of such apportionment. They say: "There is great difficulty in separating the damages for which a recovery is allowable from those for which it is not, yet such separation must be made. . . . We can lay down no rule for its ascertainment which we think would be of any practical benefit."

Justice BECK, in dissenting from this part of the opinion of his two associates, says: "The last part of the second point I cannot approve. It is too nice, too theoretical, for practical application. It raises an objection which does not, in fact, exist, and fails to give a satisfactory answer thereto. It imagines a disease, and provides no cure for it. The railroad cannot be built with one rail; the two are necessary to its construction. It is a unity composed of two rails, the ties, the ground it occupies, etc. Now this unity injures plaintiffs' property. The injury is not from the rail on plaintiffs' land, but from the entire road regarded as one thing. Plaintiffs may recover, in view of Mr. Justice ADAMS' opinion, because the road is partly on their land. The road, as a

unity, injures plaintiffs' property. The rail on their land is not the cause of the injury. They ought to recover for all the injury sustained on account of the road. But the rule of the opinion prevents recovery for the full amount of damages they have sustained. It is in conflict with the fundamental rule which secures the recovery of damages which will fully compensate the injuries sustained."

The reasons of the dissenting justice harmonize with the reason given by this court upon the former appeal above quoted, and commend themselves to our judgment as the better reasons. The learned counsel for the appellants, seeing, per-. haps, the difficulties which intervene in apportioning the damages according to the quantity of land taken from the plaintiff and that taken by the company from the adjoining owners, and considering that such rule had been discarded by this court in its former opinion, now attempt to reach a like result by insisting that the plaintiff shall not recover any damages which result from the mere proximity of the defendant's railroad to the plaintiff's lands, except so far as such damages are increased by the taking of plaintiff's land; and they have introduced evidence to show that the plaintiff's injuries would have been just as great if the railroad had been operated in the street, but entirely off of his lands, and the jury have so found the fact. Upon this theory of the case, if the railroad is located along the middle of a public street, none of the owners on either side would be entitled to recover beyond nominal damages for the actual occupation permanently of the lands in the street, as it is probable that a jury would in each case find, as they did in this, that the removal of the track a few feet one way or the other, in the middle part of the street, would not materially enhance or diminish the damages to the adjoining property.

The same result would follow where the line of the railroad was on the line between two adjoining owners, half the track on one and half on the other. In such case neither could

recover beyond the value of the lands actually taken, as all other damages would generally result from what the counsel properly calls proximity of the railroad, and they would be the same, or nearly so, if the road were all upon one side of the dividing line. If the road were all on one side of the dividing line, the man upon whose land the road did not lie could not recover any damages because none of his land would be taken; and the man whose land was taken could recover only the value of the land actually taken, because his damages arising from the maintenance of the road would be nearly or quite the same had the road been located just off his land on the lands of the adjoining owner. None of the decisions of this court have recognized the distinction sought to be raised in this case. The statute provides that railroads may exercise the right of eminent domain upon certain conditions. They may take the lands of any citizen for the legitimate purposes of their corporations, upon making the just compensation provided for in the constitution, and this just compensation has been declared by the statutes to be "the value of the lands actually taken, and the damages sustained by the owner by reason of the taking thereof." See section 1848, R. S. 1878. And this court held in *Bigelow v. Railway Co.*, 27 Wis., 478; *Parks v. Railroad Co.*, 33 Wis., 413, and *Bohlman v. Railway Co.*, 40 Wis., 157, that nothing less than the allowance of such damages as are allowed by this statute would be a compliance with the requirement of the constitution that a "just compensation" shall be paid to the owner for his property taken for a public use. When, therefore, a railroad corporation takes the land of a citizen, it must comply with the conditions fixed by the constitution and the law; and if the constitution and the law requires that it shall pay the owner the value of the lands actually taken, and all other damages sustained by him by reason of such taking, then it must so pay or not take the land. The only question is, whether damages by reason of the proximity of the railroad

are a part of the damages which the owner sustains by reason of the taking of his land for the purpose of operating a railroad thereon. We are not discussing the question as to whether a man whose property is not actually taken for the purposes of a railroad can recover damages by reason of the proximity of the road to his land. We may admit, for the purposes of this discussion and of this case, that he cannot. The fact that a man whose land is not taken cannot recover any consequential damages which he may sustain by reason of the building and operating the road near his land, does not prove that the party whose land is so taken cannot recover damages of a like nature. The right of the latter depends upon the constitution and the statute giving him the right to recover damages, and the right of the former depends upon the principles of the common law, the statute being entirely silent on the subject. If the "just compensation" spoken of in the constitution would not require the corporation taking the lands of the citizen for a public use to pay the consequential damages resulting from operating the railroad upon his land, still it would be entirely competent for the legislature to require the corporation to pay such damages as a condition of granting the right to take the property. The constitution clearly does not prevent the legislature from attaching other conditions beyond the payment of a just compensation to the right to take the property of the citizen for a public use, especially when such right is granted to a corporation which is not, in all its purposes, a mere public institution. It is, we think, settled in this state, that a person whose lands are actually taken for the uses of a railroad may recover the value of the lands taken, and for any other injury to his lands not taken, being a part of the tract used, together with that which is taken, and that no deduction can be made from such damage upon the pretext that his injury would have been just as great had the road been constructed in any other place, and just off his land. I suggest that it may be a sufficient reply to this

claim, that the plaintiff would have been equally injured if the railroad had been built in another place, and just adjoining his lands, that there is no presumption that the railroad would have been built in any other place than where it was built, in the immediate vicinity of the lands injured. The court and jury have no right to guess that if the road had not been built on the plaintiff's land it would probably have been built very near it, and so he would have been equally injured, whether his lands were taken or not, except as to the mere value of the lands so taken.

It may be said that the law is unequal and unjust which allows the person whose lands are taken not only the value of his lands, but his damages resulting from the use of the lands so taken for railroad purposes, and makes no provision for making any compensation to the adjoining owner whose lands are not taken, but suffers in the same degree as his neighbor from the operation of the road. There may be some force in this argument when addressed to the legislature; but it can have but little force when addressed to the court, whose duty it is, not to make the laws, but to administer them as made.

The decisions of this court fully establish the rule, that the owner whose lands are taken for the use of a railroad is entitled to recover the actual value of the lands taken, and all other damages which he sustains by reason of the taking and use of his lands for the purposes of a railroad, and that, in fixing the amount of the same, the court or jury must estimate such damages as arise from and are directly attributable to, the construction, maintenance and operation of the road in the place where the same is located across his lands, without making any deduction based upon the guess that if the road had not been built across his land it would have been built near it, and consequently he would have been injured to nearly the same extent. *Railroad Co. v. Eble*, 3 Pin., 334; *Robbins v. Railroad Co.*, 6 Wis., 636; id., 605; *Janesville v. Railroad*

*Co.*, 7 Wis., 484; *Ford v. Railway Co.*, 14 Wis., 609; *Pomeroy v. Railroad Co.*, 16 Wis., 640; *Snyder v. Railroad Co.*, 25 Wis., 60; *Thompson v. Railway Co.*, 27 Wis., 93; *Price v. Same*, id., 98; *Welch v. Railway Co.*, 27 Wis., 108; *Bigelow v. Railway Co.*, id., 478; *Hegar v. Railway Co.*, 26 Wis., 624; *Farrand v. Railway Co.*, 21 Wis., 435; *Parks v. Railroad Co.*, 33 Wis., 413; *Chapman v. Railroad Co.*, id., 629; *Sherman v. Railroad Co.*, 40 Wis., 645; *Bohlman v. Railway Co.*, id., 157; *Blesch v. Railway Co.*, 43 Wis., 183; and *Carl v. Railroad Co.*, 46 Wis., 625.

The rule of damages above discussed applies to proceedings to condemn and take lands for a railroad under the statute; and certainly an equally liberal rule should be adopted in estimating the damages to be recovered against a corporation which has taken and used the lands of the plaintiff as a mere trespasser. On the whole, we think, the charge of the learned circuit judge upon the question of damages was in accordance with the statute and the decisions of this court upon the subject, and that there was no error committed by him in that part of his charge.

If the judge erred in charging the jury that it was immaterial, as affecting the plaintiff's right to recover, whether any part of the defendant's track was upon his land or not, such error could not affect the judgment in this case, as the special verdict finds that the road was in part located and operated upon his lands.

We have examined the exceptions taken to the admission of evidence, and do not think the judge erred in this respect. Upon the whole record we are satisfied that the case was fairly tried upon its merits up to the point when the same was submitted to the jury; and we regret that we are compelled to reverse this judgment on account of irregularities which occurred in procuring the final verdict of the jury. This case presents a gross perversion of the statutory right of a party to a special instead of a general verdict. In this case there were

but two litigated questions: *First*, Was the defendant's railroad, or any part of it, located and operated upon the plaintiff's land? and *second*, If it was so located upon his land, what damages had he suffered in consequence of such location and operation? Yet upon this question of damages, which was in its nature indivisible, and any attempt to analyze the same and fix the amount which should be charged for each element which went to make up the whole damage would at best be an uncertain guess, the jury were required by the plaintiff to answer five questions, by the defendant seven, and by the court one. The third question put by the court and the fifth one put by the plaintiff covered the whole question of damages. All the others, by both the plaintiff and defendant, were questions strictly in the nature of an examination of the jury to ascertain what elements of damage they considered in making up the gross damage, and requiring them to fix a definite sum allowed by them for each of those elements. This examination of the jury tended only to confuse and embarrass, without in any manner aiding them or the court in arriving at a true verdict. The result of the process in this case is a clear demonstration of the perniciousness of the practice.

When the jury returned into court the first time, they submitted a verdict, and had attempted to answer, and did in fact answer, all the questions submitted; but the cross examination had effected the confusion it necessarily tended to, and the answers were apparently contradictory. In attempting to analyze the damage into its various elements, and affix a sum to each element, and also to fix the amount of the damages in gross, the gross damages found did not agree with the total of the sums fixed to the several elements of damage. The verdict as first returned showed that the several sums given in answer to the questions calling for the amount of damage they found resulting from particular causes, amounted to the sum of $2,165.85; and in answer to question 5, as to what the gross damage was, they say $3,090, composed of the items which,

Blesch vs. The Chicago & Northwestern R'y Co.

according to their previous answers, amounted to the said sum of $2,165.85, and the item fixed to the third question proposed by the court. The answer to such third question was as follows:

*Answer.* $5,100, less $2,010 in questions 2, 3 and 4— $3,090.

Questions 2, 3 and 4, above referred to, were probably intended for 1, 3 and 4, mentioned in the answer to the 5th question of the plaintiff. These answers staggered the presiding judge, and, as it seemed to him impossible to determine what the jury meant to find as the plaintiff's gross damages, he further instructed the jury, and sent them out again to explain their verdict. They came in the second time with the same answers as at first, except that the answer to plaintiff's fifth question, instead of being $3,090, was now $3,251.96; and the answer to the third question propounded by the court was changed by striking out all the first answer, and inserting in its stead $1,086.11. This answer was more inexplicable than the first, as the answer to the court's third question called for the same amount of gross damages as the answer to the plaintiff's fifth. The judge then further instructed the jury, and prepared three more questions for them to answer; and the jury retired for the third time, and then returned their answers as follows: The answers to the first, second and third questions of the plaintiff were the same as they returned the first and second times. The answer to the fourth question of the plaintiff was changed from the sum $271.52, as answered the first and second times, to the sum of $1,357.62. The answer to the fifth question of plaintiff was the same as returned the second time, viz.: $3,251.96, and the answer to the third question of the court was now made $3,251.96, the same as the answer to the fifth question by the plaintiff. All the other questions were answered as at first, except the additional questions propounded after the jury had returned into court the second time. The verdict had now become consistent with itself, and the jury were discharged.

We think it would be a dangerous precedent to permit a verdict obtained in this manner to stand.   It will be seen that the jury at first returned, in answer to the third question of the plaintiff, that they estimated the damages by reason of the injury to the plaintiff's premises as a residence for himself and family, at the sum of $25 per year, or a total of $272.52; and that, on their returning their verdict for the third time, they estimate this same item of damages at $125 per year, or a total of $1,357.62; that they first returned their verdict for the total damages in answer to the plaintiff's fifth and the court's third question at the sum of $3,090; and that by their second verdict they fix this total damage, in answer to plaintiff's question, at $3,251.96, and in answer to the court's question on the same subject at $1,086.11, and by their third verdict, to both questions, at $3,251.96.

The power of the court to refer the verdict of a jury back to them for further consideration must have some limits; and the exercise of this power has always been looked upon with disfavor, except in those cases where it is exercised for the purpose of allowing the jury to perfect a verdict which is imperfect by reason of their omission to make some necessary computation of interest, or the amount due upon some instrument upon which they have found a party entitled to recover. But when the jury have found upon all the issues submitted to them, it would seem improper for the court to recommit the matter to them again for the reason that in the estimation of the court there is some inconsistency in the same.   If there should be an inconsistency so glaring that it was evident the jury had made a mistake, it might be permissible for the court to call the attention of the jury to such mistake, and permit them to retire and correct the same, if they desired to do so. But we do not think it permissible to allow a jury, under pretense of correcting a mistake in their verdict, to render a verdict essentially different from that which was first rendered. A jury, having once fixed the amount of damages they find the

plaintiff entitled to recover, ought not to be permitted to change such amount to the prejudice of either party, unless it clearly appears that the amount first inserted in the verdict was not the amount intended by the jury to be given, and the sum so inserted had been placed there by mistake, contrary to their intention. In this case the jury changed both the amount of damages in gross and the damages arising from a particular cause, after their first verdict was returned to the court, without giving any apparent reason for so doing, except, perhaps, that it was done in order to make the verdict consistent with itself. We are not satisfied with the verdict of a jury which, after mature deliberation, deliberately finds that the plaintiff is entitled to recover the sum of $3,090, and then, upon the matter being again submitted to them, finds he is entitled to recover the sum of $3,251.96, without rendering any excuse for the addition; nor with a verdict that first finds that plaintiff's damages to his premises as a dwelling-house is twenty-five dollars per year, and then, upon reconsideration, finds the same damages to be $125 per year, giving no reason for the change of opinion except that such last finding will make it consistent with the final general verdict as to damages.

Proffatt, in his work on Jury Trial, § 457, says: " When the jury return a general verdict settling the rights of the parties, and upon which judgment can be entered, or when they return a special verdict finding the facts of the case, and leaving the questions of law arising upon those facts to the court, it would be improper for the court to send them out again for further consideration." Whittaker, in his Practice, vol. 2, 395, says: " If the verdict be returned in open court, and in the presence of counsel, and the jury, as is often the case, have fallen into manifest error, the present is the proper period for correction. By a reconsideration of such errors, under the direction of the judge, much subsequent trouble, and possibly the necessity of a new trial, may be obviated. This observation, of course, as-

sumes that the errors in question have arisen from a manifest misapprehension, on the part of the jury, as to the extent of their functions or as to the real nature of the question submitted to them; and it cannot be changed in substance, however erroneous it may be." See also *Trust Co. v. Harris*, 2 Bosw., 75, and *Sutliff v. Gilbert*, 8 Ohio, 405.

The appellant having objected to committing the case the second and third times to the jury, and in view of the fact that the final verdict as rendered by the jury was substantially different in its material parts from that first rendered, we are of the opinion that the judgment must be reversed, and a new trial granted.

Before closing this opinion, we are constrained to again remark that the necessity for a new trial in this case grows out of the fact that the question as to the amount of damages which the plaintiff was entitled to recover was unnecessarily and improperly embarrassed by requiring the jury to answer a large number of questions relating to circumstances which they might be supposed to consider in arriving at the amount of damages which the plaintiff ought to recover. Under the circumstances, the jury were less to blame for being unable to give a consistent and wholly satisfactory verdict, than the parties for demanding that they should give an analysis of the elements of damage which made up the gross damage, and fix a certain sum as the amount' allowed for each such element. The right to demand a special verdict of a jury is in many cases a valuable one; and when this right is properly limited to the ascertainment of such facts, and such alone, as are material to the rights of the parties, it cannot but aid in the attainment of just verdicts. The statute upon this subject, section 2858, R. S. 1878, directs that when a special verdict is demanded, " such verdict shall be prepared by the court in the form of questions in writing; *relating only to material issues of fact, and admitting a direct answer, to which the jury shall make answer in writing.*" We suggest that the learned

circuit judges, in taking special verdicts, should adhere to the directions of this statute, and, while they avail themselves of the reasonable suggestions of learned counsel for the respective parties as to what questions should be submitted, submit only such as relate to the material issues, and rigorously exclude all questions which have no other object than to obtain from the jury the reasons which actuate them in finding such material facts.    In this case, the one question put to the jury by the court upon the subject of damages covered completely the issue in the case upon that point, and, in our estimation, should have been the only question submitted to them upon that issue; and all the other questions upon that subject, put by the plaintiff and defendant, might with great propriety have been excluded by the court as immaterial and impertinent.    It is now evident that if such course had been taken by the learned judge, it would have saved both parties the expenses of a new trial in the action.    The learned circuit judge had, in his instructions to the jury, very clearly pointed out what facts and circumstances they might consider as going to the question of damages, and what they should not consider in estimating them.    It is to be presumed that the jury gave proper attention to these instructions of the court; and neither party to the action had an absolute right to compel them to answer questions propounded for the mere purpose of ascertaining whether they in fact followed the instructions given.

We have been constrained to make these strictures upon the manner of taking the special verdict in this case, not so much for the reason that it is more objectionable than many others which have come under the consideration of this court, but because the vicious practice in this case has been highly prejudicial to the interests of the parties litigant, and furnishes a favorable opportunity to urge upon the bench and bar the necessity of a greatly needed reformation of the practice in this particular.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for a new trial. ·

A motion for a rehearing was denied on the 3d of February, 1880.